# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
July 18, 2019

Lyle W. Cayce
Clerk

No. 18-60275

JORDANY PIERRE-PAUL, also known as Yves Pierre, also known as Yves Paul,

      Petitioner,

v.

WILLIAM P. BARR, U.S. ATTORNEY GENERAL,

      Respondent.

---

Petitions for Review of Order
of the Board of Immigration Appeals
BIA No. A076 459 138

---

Before SMITH, WIENER, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Jordany Pierre-Paul petitions for review of the order of the Board of Immigration Appeals (BIA), arguing that the immigration court lacked jurisdiction, that the BIA erred in denying his application for asylum, withholding of removal, and cancellation of removal, and that the immigration judge violated his due process rights. Because we reject Pierre-Paul's jurisdictional and due process arguments, we deny his petition in part.

No. 18-60275

Because we lack jurisdiction to review the denial of asylum, withholding of removal, and cancellation of removal, we dismiss his petition in part.

I.

Pierre-Paul is a citizen of Haiti who was admitted to the United States on May 14, 2001, based on his mother's asylum. Since his arrival to the United States, Pierre-Paul acquired a lengthy criminal record with nine convictions. Before the initiation of his removal proceedings, Pierre-Paul had four criminal convictions: a 2005 conviction for criminal trespass, a 2007 conviction for evidence tampering, a 2007 conviction for making a terroristic threat, and a 2009 conviction for assault causing bodily injury.

On May 11, 2010, the government initiated removal proceedings against Pierre-Paul by filing a notice to appear with the immigration court. In the initial notice to appear, the government included a charge for being an alien convicted of a crime involving moral turpitude within five years of admission to the United States, under 8 U.S.C. § 1227(a)(2)(A)(i). The initial notice to appear was personally served on Pierre-Paul, but it did not specify the time and date of the initial hearing. The immigration court subsequently sent a notice of hearing on May 11, 2010 that specified that Pierre-Paul's initial proceeding was scheduled for 8:30 AM on May 21, 2010. The notice of the initial hearing was served both in person and by mail. Pierre-Paul, who was detained in ICE custody, attended his initial hearing on May 21, 2010 "via televideo."

While his removal proceedings were pending between October 2011 and December 2015, Pierre-Paul acquired four more criminal convictions: a 2011 conviction for driving without a license, a 2012 conviction for cocaine possession, a 2012 conviction for making a terroristic threat, and a 2015 conviction for cocaine possession. For this reason, Pierre-Paul was in and out of jail and prison, and his removal proceedings were not re-calendared until

2

No. 18-60275

August 2016. In June 2010, the government added a charge for being an alien convicted of multiple crimes involving moral turpitude, under 8 U.S.C. § 1227(a)(2)(A)(ii), based on Pierre-Paul's 2007 convictions for evidence tampering and making a terroristic threat. In December 2016, the government also added charges, under 8 U.S.C. § 1227(a)(2)(B)(i), for being an alien convicted of a crime related to a controlled substance based on his convictions for cocaine possession.

After a competency hearing held on October 6, 2016, an immigration judge found Pierre-Paul mentally incompetent. At the hearing, the immigration judge ordered that an attorney be appointed to represent Pierre-Paul to protect his rights and facilitate his participation in subsequent hearings. In March 2017, Pierre-Paul's case was transferred to a different immigration judge who ultimately ordered Pierre-Paul removed and denied his application for asylum, withholding of removal, relief under the Convention Against Torture (CAT), and cancellation of removal.

On September 22, 2017, the immigration judge issued her order. In her order, the immigration judge noted the fact that a previous immigration judge had found Pierre-Paul incompetent and appointed counsel. The immigration judge also observed that, as the proceedings continued, additional procedural safeguards were placed: Namely, Pierre-Paul's narrations of facts in his asylum application and testimony and subjective fear of returning to Haiti had been credited as true. The immigration judge then found Pierre-Paul removable under 8 U.S.C. § 1227(a)(2)(B)(i) based on his concession of removability and his two cocaine-possession convictions.[1]

---

[1] The government had withdrawn the charge under 8 U.S.C. § 1227(a)(2)(A)(i) (committing a crime involving moral turpitude within 5 years of admission). The government did not withdraw the charge under 8 U.S.C. § 1227(a)(2)(A)(ii) (committing multiple crimes involving moral turpitude); however, the immigration judge ultimately dismissed the charge

No. 18-60275

The immigration judge also denied Pierre-Paul's application for asylum and withholding of removal for two reasons. First, the immigration judge concluded that Pierre-Paul's proposed particularized social group—mentally ill Haitians who suffer from schizophrenia—was not legally cognizable. Alternatively, the immigration judge concluded that Pierre-Paul failed to demonstrate that he would be persecuted on account of being a mentally ill Haitian suffering from schizophrenia. As to Pierre-Paul's application for CAT relief, the immigration judge found that Pierre-Paul failed to demonstrate that he would be tortured by, or with the acquiescence of, the Haitian government.

The immigration judge then denied cancellation of removal for two reasons. First, the immigration judge concluded that Pierre-Paul was statutorily ineligible. *See* 8 U.S.C. § 1229b(a)(2) (requiring seven years of continuous residence in the United States); *Matter of Perez*, 22 I. & N. Dec. 689 (BIA 1999) (holding that continuous residence terminates on the date a qualifying offense is committed). Second, the immigration judge declined to cancel Pierre-Paul's removal as a matter of discretion after weighing the favorable and adverse factors. The immigration judge concluded that "the seriousness of [Pierre-Paul's] criminal history and violent tendencies" outweighed his "long-term residency, family ties, . . . employment history, . . . [and] his mental illness."

The BIA dismissed Pierre-Paul's appeal on March 16, 2018. The BIA held that Pierre-Paul did not adequately appeal the CAT issue. The BIA affirmed the denial of asylum and withholding of removal because Pierre-Paul failed to establish a nexus between persecution and his proposed particular social group. The BIA did not decide whether Pierre-Paul's group was legally

---

on the ground that the record was "inconclusive" as to whether evidence tampering is a crime involving moral turpitude under the modified categorical approach.

cognizable.   Finally, as to the denial of cancellation of removal, the BIA expressly declined to address Pierre-Paul's statutory eligibility.   Instead, the BIA conducted a *de novo* review, balanced the equities, and concluded that, as a matter of discretion, cancellation of removal was not warranted.  In the BIA's view, Pierre-Paul's lengthy criminal history outweighed the positive factors.

Pierre-Paul now petitions for our review on various grounds.  First, he argues that the immigration court lacked jurisdiction because his original notice to appear was defective.   He also challenges the denial of asylum, withholding of removal, and cancellation of removal.   Finally, Pierre-Paul argues that the immigration judge violated his due process rights by failing to adhere to the procedural safeguards that were put in place after the competency hearing.  We consider each of these issues in turn.

## II.

We first turn to Pierre-Paul's argument that the immigration court lacked jurisdiction because his original notice to appear did not include the time and date of the initial hearing.  Title 8 C.F.R. § 1003.14 states that the immigration court's "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court . . . ."   In turn, "charging document" is defined as "the written instrument which initiates a proceeding" before the immigration court, including a notice to appear.  8 C.F.R. § 1003.13.   The regulations further specify that "[i]n removal proceedings pursuant to [8 U.S.C. § 1229a], the [government] shall provide in the Notice to Appear[] the time, place and date of the initial removal hearing, where practicable."  8 C.F.R. § 1003.18.

Relying on the Supreme Court's holding in *Pereira* that "[a] putative notice to appear that fails to designate the specific time or place . . . is not a 'notice to appear under [8 U.S.C. §] 1229(a),'" Pierre-Paul argues that his notice to appear, which lacked the time and date of his proceeding, was not a

valid charging document under 8 C.F.R. § 1003.14. *Pereira v. Sessions*, 138 S. Ct. 2105, 2113–14 (2018). In response, the government answers that the notice to appear was not defective under the regulations. Alternatively, the government relies on the BIA's post-*Pereira* decision in *Bermudez-Cota* to argue that, even if Pierre-Paul's notice to appear were defective, the immigration court complied with 8 U.S.C. § 1229(a) by adhering to a two-step process and sending a subsequent notice of hearing containing the time and date of the hearing. *See Matter of Bermudez-Cota*, 27 I. & N. Dec. 441, 445–46 (BIA 2018).

We reject Pierre-Paul's argument for three independent reasons.[2] First, Pierre-Paul's notice to appear was not defective. Second, assuming *arguendo* that the notice to appear were defective, the immigration court cured the defect by subsequently sending a notice of hearing that included the time and date of the hearing. Third, assuming *arguendo* that the notice to appear were defective and the defect could not be cured, 8 C.F.R. § 1003.14 is not jurisdictional. Rather, it is a claim-processing rule, and Pierre-Paul failed to raise the issue in a timely manner.

## A.

Pierre-Paul's notice to appear was not defective. We have already observed that the Supreme Court in *Pereira* addressed a "narrow question" of whether a notice to appear that omits the time or place of the initial hearing triggers the statutory stop-time rule for cancellation of removal. *Mauricio-Benitez v. Sessions*, 908 F.3d 144, 148 n.1 (5th Cir. 2018); *see also Pereira*, 138 S. Ct. at 2110. The key to the *Pereira* decision was the stop-time rule's

---

[2] In this circuit, alternative holdings are binding and not *obiter dictum*. *Luna-Garcia v. Barr*, 924 F.3d 198, 204 n.3 (5th Cir. 2019); *Texas v. United States*, 809 F.3d 134, 178 n.158 (5th Cir. 2015), *aff'd by an equally divided court sub nom.*, *United States v. Texas*, 136 S. Ct. 2271, 2272 (2016) (Mem.).

reference to "under," which was "the glue that bonds the stop-time rule to [8 U.S.C. § 1229(a)'s] substantive time-and-place requirements." 138 S. Ct. at 2117. The stop-time rule states that an alien's "period of . . . continuous physical presence" is "deemed to end . . . when the alien is served a notice to appear *under* [8 U.S.C. § 1229(a)]." 8 U.S.C. § 1229b(d)(1) (emphasis added). 8 U.S.C. § 1229(a) specifies that a notice to appear must include the time and place of the initial hearing. 8 U.S.C. § 1229(a)(1)(G)(i). Looking to "the intersection of those statutory provisions," the Supreme Court held that "[a] putative notice to appear that fails to designate the specific time or place . . . is not a 'notice to appear under [8 U.S.C. §] 1229(a).'" *Pereira*, 138 S. Ct. at 2110, 2113–14.

Pierre-Paul seeks to extend *Pereira*'s narrow holding beyond the stop-time rule context: Because his notice to appear omitted the time and date of his initial hearing, he argues that it was defective and could not constitute a charging document. The government responds by pointing us to our sister circuits' cases holding that *Pereira* does not extend outside the stop-time rule context and by arguing that, to serve as a charging document, the notice to appear needs to satisfy the regulations, not 8 U.S.C. § 1229(a).

We reject Pierre-Paul's argument and join the overwhelming chorus of our sister circuits that have already rejected similar *Pereira*-based challenges. *See Nkomo v. Attorney Gen.*, No. 18-3109, 2019 WL 3048577, at *2–3 (3d Cir. July 12, 2019); *Ali v. Barr*, 924 F.3d 983, 986 (8th Cir. 2019); *Banegas Gomez v. Barr*, 922 F.3d 101, 110–12 (2d Cir. 2019); *Soriano-Mendosa v. Barr*, 768 F. App'x 796, 801–02 (10th Cir. 2019); *Santos-Santos v. Barr*, 917 F.3d 486, 490–91 (6th Cir. 2019); *Karingithi v. Whitaker*, 913 F.3d 1158, 1161–62 (9th Cir. 2019); *Leonard v. Whitaker*, 746 F. App'x 269, 269–70 (4th Cir. 2018) (citing *Mauricio-Benitez*, 908 F.3d at 148 n.1); *see also Ortiz-Santiago v. Barr*, 924

F.3d 956, 966 (7th Cir. 2019).[3]  *Pereira* turned on the intersection of two statutory texts and the word "under" that glued the stop-time rule to the time-and-place requirement.   138 S. Ct. at 2110; *see also* 8 U.S.C. §§ 1229(a), 1229b(d)(1).   However, the regulations do not carry such glue and are not textually bonded to 8 U.S.C. § 1229(a).  *See Banegas Gomez*, 922 F.3d at 111; *Karingithi*, 913 F.3d at 1161 ("There is no 'glue' to bind § 1229(a) and [these] regulations[.]").

As noted above, under 8 C.F.R. § 1003.14, proceedings before an immigration judge commence when a charging document is filed.  To constitute a valid charging document, the regulations require that a notice to appear list the nature of the proceedings, the legal authority for the proceedings, and the warning about the possibility of *in absentia* removal, *etc.*  8 C.F.R. §§ 1003.15, 1003.26; *see also Santos-Santos*, 917 F.3d at 490 (cataloguing required items under the regulations).  The government must include the time, date, and place of the initial hearing only "where practicable."  8 C.F.R. § 1003.18(b).  Conflicts between the regulations and 8 U.S.C. § 1229(a) arise and implicate *Pereira* only when the government attempts to use a notice to appear that omits the time or place to satisfy one of the statutorily defined functions that are textually glued to 8 U.S.C. § 1229(a).

Here, Pierre-Paul's initial notice to appear complied with all of the regulatory requirements.  Even though his notice to appear did not include the time and date of his initial hearing, the regulations do not require this information.  Thus, Pierre-Paul's notice to appear was not defective.

---

[3] Among our sister circuits, so far, the Seventh Circuit stands alone in partially accepting the *Pereira*-based argument that a notice to appear that does not contain the time or place is defective.  *Ortiz-Santiago*, 924 F.3d at 966.  Ultimately, however, the Seventh Circuit concluded that the immigration court's jurisdiction was not affected because 8 C.F.R. § 1003.14 is a claim-processing rule.  *Ortiz-Santiago*, 924 F.3d at 966.  We agree with this second holding and discuss it below in Part II.C.

No. 18-60275

B.

Alternatively, assuming *arguendo* that Pierre-Paul's notice to appear were defective under 8 U.S.C. § 1229(a), the immigration court cured the defect by subsequently mailing a notice of hearing that contained the time and date of the initial hearing.

The government relies on the BIA's precedential opinion concluding that a defective notice to appear can be cured "so long as a notice of hearing specifying this information is later sent to the alien." *Bermudez-Cota*, 27 I. & N. Dec. at 447. The BIA also observed that "[t]he regulation does not specify what information must be contained in a 'charging document' at the time it is filed with an Immigration Court" and that the regulation does not "mandate that the document specify the time and date of the initial hearing." *Id.* at 445. Several of our sister circuits have held that "[t]he BIA's interpretation does not conflict with the [Immigration and Nationality Act] and is consistent with the regulations." *Banegas Gomez*, 922 F.3d at 112; *see also Molina-Guillen v. U.S. Attorney Gen.*, 758 F. App'x 893, 898–99 (11th Cir. 2019); *Karingithi*, 913 F.3d at 1161–62; *Hernandez-Perez*, 911 F.3d at 314–15; *but see Lopez v. Barr*, 925 F.3d 396, 405 (9th Cir. 2019) (holding that a defective notice to appear cannot be cured); *Ortiz-Santiago*, 924 F.3d at 962 (same).

We agree with the government, the BIA, and some of our sister circuits that a defective notice to appear may be cured with a subsequent notice of hearing. As a threshold matter, *Pereira* did not directly address whether a defective notice to appear may be cured by a subsequent notice of hearing. Pereira was served with a notice to appear that omitted the date and time of his initial hearing, but he was never served with a subsequent notice of hearing because the immigration court mailed the notice of hearing to a wrong address. *Pereira*, 138 S. Ct. at 2112. "Because [the government] failed to serve Pereira with a supplemental notice . . . , the Supreme Court was not called upon to,

9

and did not, address whether all the requirements of a notice to appear listed in [8 U.S.C.] § 1229(a) must be contained in a single document." *Lopez*, 925 F.3d at 406 (Callahan, J., dissenting).

The two-step process comports with relevant statutory language. Title 8 U.S.C. § 1229(a) states that "written notice (in this section referred to as a 'notice to appear') shall be given . . . to the alien . . . specifying" the required items including the time and place of the initial proceedings. 8 U.S.C. § 1229(a)(1)(G)(i). The noun "written notice" as used in § 1229(a) alone does not specify that all the required items must be contained in a single document. *Matter of Hernandez*, 27 I. & N. Dec. 520, 531 (BIA 2019) (declining to interpret § 1229(a) as requiring a single document). Although "written notice" is referred to as "a 'notice to appear'" in 8 U.S.C. § 1229, the fact that "the notice to appear is *generally* issued in a single document" does not mean that "all the criteria listed in § 1229(a) *must* be contained in a single document." *Lopez*, 925 F.3d at 407 (Callahan, J., dissenting). Indeed, 1 U.S.C. § 1 informs us that "[i]n determining the meaning of any Act of Congress, unless context indicates otherwise[,] words importing the singular include and apply to several persons, parties, or things."

Moreover, the two-step process also furthers "Congress' aim" by ensuring that aliens receive notice of the time and place of the proceedings. *United States v. Hayes*, 555 U.S. 415, 422 n.5 (2009); *see also Pereira*, 138 S. Ct. at 2115 (observing that "an essential function of a notice to appear" is to "facilitate appearance at [removal] proceedings"). The two-step process allows the government to fulfill this aim by furnishing the alien with the time and place of his hearing. Thus, even if Pierre-Paul's notice to appear were defective, the immigration court cured the defect by mailing a notice of hearing containing the date and time of the initial hearing.

No. 18-60275

C.

Even if Pierre-Paul's notice to appear were defective, and even if that defect could not be cured, 8 C.F.R. § 1003.14 is not jurisdictional but is a claim-processing rule.[4] Pierre-Paul argues that the regulation is jurisdictional based on its language. In its 28(j) letter, the government cites to Chief Judge Wood's opinion from the Seventh Circuit that concluded that 8 C.F.R. § 1003.14 is not jurisdictional but is instead a claim-processing rule. *Ortiz-Santiago*, 924 F.3d at 963–64. In *Ortiz-Santiago*, the Seventh Circuit concluded that, although the alien's notice to appear was defective and the defect could not be cured, the alien could not prevail because he waited too long and did not raise the claim-processing rule until his appeal was pending before the BIA. *Id.* at 964.

We agree with the Seventh Circuit's treatment of 8 C.F.R. § 1003.14 as a claim-processing rule. "Characterizing a rule as a limit on subject-matter jurisdiction 'renders it unique in our adversarial system.'" *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (quoting *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013)). "Unlike most arguments, challenges to subject-matter jurisdiction may be raised by the defendant 'at any point in the litigation,' and courts must consider them *sua sponte*." *Id.* (quoting *Gonzales v. Thaler*, 565 U.S. 134, 141 (2012)). While "harsh consequences" follow a failure to comply with jurisdictional rules, less harsh consequences follow a failure to comply with non-jurisdictional claim-processing rules. *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1632 (2015). A claim-processing rule is a rule that "seek[s] to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). A claim-processing rule is

---

[4] Having concluded that the notices to appear omitting the time, date, or place are not defective, none of our sister circuits except the Seventh Circuit needed to address whether 8 C.F.R. § 1003.14 was jurisdictional.

mandatory to the extent a court must enforce the rule if a party properly raises it. *Fort Bend Cty.*, 139 S. Ct. at 1849. "But an objection based on a mandatory claim-processing rule may be forfeited 'if the party asserting the rule waits too long to raise the point.'" *Id.* (quoting *Eberhart v. United States*, 546 U.S. 12, 15 (2005)).

Congress has not "clearly state[d]" that the immigration court's jurisdiction depends on the content of notices to appear. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006). Congress has delineated the subject matter of the immigration court's purview by providing that "[a]n immigration judge shall . . . decid[e] the inadmissibility or deportability of an alien," but it has not made the immigration court's jurisdiction dependent upon notices to appear. 8 U.S.C. § 1229a(a)(1); *Banegas Gomez*, 922 F.3d at 110. This congressional silence heavily weighs against treating the requirements relating to notices to appear as jurisdictional. *See Arbaugh*, 546 U.S. at 516 ("[W]hen Congress does not rank a [requirement] as jurisdictional, courts should treat the restriction as nonjurisdictional in character.").

Furthermore, the fact that the Attorney General promulgated 8 C.F.R. § 1003.14 also weighs against treating it as a jurisdictional rule. "While an agency may adopt rules and processes to maintain order, it cannot define the scope of its power to hear cases." *Ortiz-Santiago*, 924 F.3d at 963. The Supreme Court's opinion in *Union Pacific Railroad Company*, which rejected the argument that a National Railroad Adjustment Board regulation was jurisdictional, is instructive. *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen*, 558 U.S. 67, 83–84 (2009). The Board's regulation provided that, in railroad labor disputes cases, "[n]o petition shall be considered by any division of the Board unless the subject matter has been [first discussed in a settlement conference]." 29 C.F.R. § 301.2(b). Observing that "Congress gave the Board no authority to adopt rules of jurisdictional dimension," the Court

held that the Board's regulation was a claim-processing rule. *Union Pac. R.R. Co.*, 558 U.S. at 83–84. Likewise, there is no congressional grant of authority to the Attorney General to adopt jurisdictional rules regarding removal proceedings.[5] Title 8 C.F.R. § 1003.14 is, therefore, a claim-processing rule.

Because 8 C.F.R. § 1003.14 is a non-jurisdictional, claim-processing rule, any alleged defect with the charging document must be raised properly and can be forfeited if the alien waits too long to raise it. *Ortiz-Santiago*, 924 F.3d at 963; *see also Fort Bend Cty.*, 139 S. Ct. at 1849. Pierre-Paul never challenged the validity of his notice to appear before the immigration judge or the BIA. He has raised the issue for the first time in his petition for review. Assuming *arguendo* that Pierre-Paul's notice to appear were defective, and the defect could not be cured, Pierre-Paul waited too long to raise this issue.[6]

---

[5] Although 6 U.S.C. § 521(a) places the Executive Office of Immigration Review "subject to the direction and regulation of the Attorney General under [8 U.S.C. § 1103(g)]," these statutory provisions do not clearly authorize the Attorney General to adopt jurisdictional rules.

[6] Ultimately, whether we call 8 C.F.R. § 1003.14 jurisdictional or non-jurisdictional matters little because the outcome would be the same. Even if the requirement to include the time and date of the initial hearing were somehow jurisdictional, under our case law, an alien who fails to object to the notice to appear and concedes his removability "waive[s] his challenge to the [immigration judge's] jurisdiction over the removal proceedings." *Sohani v. Gonzales*, 191 F. App'x 258 (5th Cir. 2006); *Nunez v. Sessions*, 882 F.3d 449, 505 n.2 (5th Cir. 2018) (applying the administrative exhaustion requirement to arguments relating to an allegedly defective notice to appear); *see also Qureshi v. Gonzales*, 442 F.3d 985, 990 (7th Cir. 2006) ("When a petitioner expressly concedes removability as charged in the [notice to appear], he waives any objection to the [immigration judge's] finding of removability, including the argument that the [immigration judge] lacked jurisdiction to find him removable."); *United Transp. Union v. Surface Transp. Bd.*, 114 F.3d 1242, 1245 (D.C. Cir. 1997) ("Arguments as to agency jurisdiction, however, cannot be raised for the first time on appeal except in the very limited case[.]"). Pierre-Paul cannot prevail because he waived his challenge by failing to object to the notice to appear and conceding his removability.

No. 18-60275

\* \* \*

To summarize, the regulations, not 8 U.S.C. § 1229(a), govern what a notice to appear must contain to constitute a valid charging document. Under the regulations, a notice to appear is sufficient to commence proceedings even if it does not include the time, date, or place of the initial hearing. Pierre-Paul's notice to appear was not defective because it included all other information required by the regulations. Even assuming that Pierre-Paul's notice to appear were defective, the immigration court cured that defect by subsequently mailing a notice of hearing that contained all pertinent information. Finally, even assuming that Pierre-Paul's notice to appear were defective and the defect could not be cured, Pierre-Paul's challenge fails because 8 C.F.R. § 1003.14 is not jurisdictional. Instead, 8 C.F.R. § 1003.14 is a claim-processing rule. An alien must properly raise the issue or risk forfeiting it. Here, Pierre-Paul forfeited the issue by waiting too long.

III.

We now turn to Pierre-Paul's challenge to the denial of asylum, withholding of removal, and cancellation of removal. The government argues that we lack jurisdiction to review these issues, and we agree.

The government raises two jurisdictional bars. As to the denial of asylum and withholding of removal, the government argues that the criminal alien bar in 8 U.S.C. § 1252(a)(2)(C) prevents our review. Under § 1252(a)(2)(C), "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered [by, *inter alia*, 8 U.S.C. § 1227(a)(2)]." Because Pierre-Paul was removed under § 1227(a)(2)(B)(i), we lack jurisdiction to review the denial of asylum and withholding of removal, except to the extent Pierre-Paul raises legal or constitutional questions. *See* 8 U.S.C. § 1252(a)(2)(D); *Iruegas-Valdez v. Yates*, 846 F.3d 806, 810 (5th Cir. 2017).

14

Pierre-Paul has failed to present a question of law for which our jurisdiction is preserved under 8 U.S.C. § 1252(a)(2)(D).    Pierre-Paul challenges the BIA's finding that he could not prove the nexus.    The nexus issue, however, is a factual question reviewed under the substantial evidence standard, and, thus, an issue which this court lacks jurisdiction to entertain.  *See Iruegas-Valdez*, 846 F.3d at 810; *see also Thuri v. Ashcroft*, 380 F.3d 788, 791 (5th Cir. 2004) (observing that whether an alien demonstrated the requisite nexus is a factual question).

As to the denial of cancellation of removal, the government argues that the discretionary act bar in 8 U.S.C. § 1252(a)(2)(B) precludes our review.  Under 8 U.S.C. § 1252(a)(2)(B)(i), "no court shall have jurisdiction to review—(i) any judgment regarding the granting of relief under . . . [8 U.S.C. § 1229b]."  *See also* 8 U.S.C. § 1229b (cancellation of removal); *Sattani v. Holder*, 749 F.3d 368, 372 (5th Cir. 2014) ("We lack jurisdiction to review any judgment regarding the granting or denying of discretionary relief in the form of cancellation of removal, unless the appeal involves constitutional questions or questions of law.").  Here, the BIA declined to cancel removal as a matter of discretion.    Therefore, Pierre-Paul's challenge to the BIA's denial of cancellation of removal falls squarely within the jurisdictional bar under § 1252(a)(2)(B)(i).[7]

---

[7] Pierre-Paul also challenges the immigration judge's conclusion that Pierre-Paul was statutorily ineligible for cancellation of removal and that his group was not a cognizable particular social group for asylum and withholding of removal.  However, we review only the BIA's order and review the immigration judge's order only if the BIA's reasoning rests on the immigration judge's reasoning.  *Hernandez-Castillo v. Sessions*, 875 F.3d 199, 204 (5th Cir. 2017).  Because the BIA declined to reach these issues, they are not properly before us.

No. 18-60275

IV.

Pierre-Paul's final argument is that the immigration judge violated his due process rights by failing to adhere to the procedural safeguards that a previous immigration judge put in place because Pierre-Paul was mentally incompetent. Pierre-Paul does not challenge the adequacy of the procedural safeguards but alleges that the immigration judge failed to abide by those safeguards. The BIA held that the immigration judge properly handled the procedural safeguards.[8] We agree with the BIA that the immigration judge did not violate Pierre-Paul's due process rights.

"If it is impracticable by reason of an alien's mental incompetency for the alien to be present at the proceeding, the Attorney General shall prescribe safeguards to protect the rights and privileges of the alien." 8 U.S.C. § 1229a(b)(3). "If an Immigration Judge determines that [an alien] lacks sufficient competency to proceed with the hearing, . . . [then the immigration judge] ha[s] discretion to determine which safeguards are appropriate, given the particular circumstances in a case before them." *Matter of M-A-M-*, 25 I. & N. Dec. 474, 481–82 (BIA 2011); *see also Diop v. Lynch*, 807 F.3d 70, 75 (4th Cir. 2015) ("Inherent in this process is a high degree of flexibility and discretion for the fact-finder to tailor his approach to the case at hand."). In *M-A-M-*, 25 I. & N. Dec. at 483, the BIA observed that examples of appropriate safeguards include, but are not limited to:

> [R]efusal to accept an admission of removability from an unrepresented respondent; identification and appearance of a family member or close friend who can assist the respondent and provide the court with information; docketing or managing the

---

[8] Although Pierre-Paul failed to raise the issue before the BIA, because the BIA *sua sponte* reached the issue, we have jurisdiction to review it. *Lopez-Dubon v. Holder*, 609 F.3d 642, 644 (5th Cir. 2010) ("[I]f the BIA deems an issue sufficiently presented to consider it on the merits, such action by the BIA exhausts the issue as far as the agency is concerned and that is all that [8 U.S.C.] § 1252(d)(1) requires to confer our jurisdiction.").

case to facilitate the respondent's ability to obtain legal representation and/or medical treatment in an effort to restore competency; participation of a guardian in the proceedings; continuance of the case for good cause shown; closing the hearing to the public; waiving the respondent's appearance; actively aiding in the development of the record, including the examination and cross-examination of witnesses; and reserving appeal rights for the respondent.

However, as the BIA has explained, these procedural safeguards are not a license for a mentally incompetent alien to fabricate narratives that are contrary to objective facts. "A situation could arise in which an applicant who is deemed incompetent by the immigration judge sincerely believes his account of events, although they are highly implausible to an outside observer." *Matter of J-R-R-A-*, 26 I. & N. Dec. 609, 611 (BIA 2015). In such cases, the BIA has instructed immigration judges to assess the situation on a case-by-case basis and to generally bifurcate the analysis between subjective beliefs and objective facts. *Id.* After accepting the alien's subjective belief as true, "[t]he Immigration Judge should then focus on whether the applicant can meet his burden of proof based on the objective evidence of record and other relevant issues." *Id.* at 612.

Here, the procedural safeguards for Pierre-Paul included crediting Pierre-Paul's narrations of fact, as contained in his application for asylum and withholding of removal, as true; assuming the subjectivity of his fear of returning to Haiti as true; and allowing his counsel to ask leading questions during the hearing. Pierre-Paul argues that the immigration judge failed to credit his testimony as true on three occasions, and he points to three statements made by the immigration judge in discussing Pierre-Paul's application for cancellation of removal.

In response, the government argues that the immigration judge did not diverge from the procedural safeguards, and we agree. The immigration judge

agreed to, and did in fact, accept Pierre-Paul's narration of facts as contained in his application for asylum and withholding of removal as true. The immigration judge, however, did not commit to accepting all of Pierre-Paul's narrative as true with regard to cancellation of removal.

The government also argues that even if the immigration judge had promised to accept *all* of Pierre-Paul's statements as true, the immigration judge in fact treated Pierre-Paul's narrative as "credible." We agree with the government, and the immigration judge properly concluded that Pierre-Paul fell short because "the objective evidence of record" did not warrant cancelling removal. *J-R-R-A-*, 26 I. & N. Dec. at 612. Pierre-Paul first argues that the immigration judge contradicted Pierre-Paul's testimony that he would make an effort to control his mental illness by observing that it was "highly questionable that [Pierre-Paul] will maintain his medication regime." The immigration judge understandably based this statement on the fact that Pierre-Paul "failed to continue with his recommended treatment plans" and that he "was convicted of four additional offenses after he was initially released on bond from immigration detention."

Pierre-Paul also argues that the immigration judge refused to accept his explanation of the events preceding his 2010 assault conviction. Pierre-Paul testified that he and his two friends attacked a man only because the man, without provocation, pointed a gun at them first. However, the immigration judge observed that Pierre-Paul's account was "in stark contrast to the victim and investigating officer's explanations" that the man confronted Pierre-Paul and his friends for selling drugs in his apartment complex and that they shot him. However, despite finding the discrepancy "concerning," the immigration judge continued to treat Pierre-Paul as "credible." Finally, Pierre-Paul alleges that the immigration judge believed the statements of the detention center's physicians who questioned whether Pierre-Paul fabricated a mental illness.

No. 18-60275

This allegation is meritless as the immigration judge accepted that Pierre-Paul was schizophrenic based on his "extensive medical history."

In declining to cancel removal, the immigration judge properly weighed the totality of facts and circumstances—including both Pierre-Paul's statements as well as other evidence about Pierre-Paul's past crimes and failures to continue with mental treatment. We see no variance from the procedural safeguards that amounts to due process violations.

V.

We DENY IN PART Pierre-Paul's petition for review as it relates to the immigration court's jurisdiction and its handling of procedural safeguards for Pierre-Paul. We DISMISS IN PART for lack of jurisdiction as to the denial of asylum, withholding of removal, and cancellation of removal.