# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-60805

United States Court of Appeals
Fifth Circuit

**FILED**
February 6, 2020

Lyle W. Cayce
Clerk

DANIEL GILBERTO FUENTES-BARRERA,

Petitioner

v.

WILLIAM P. BARR, U. S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A212 901 714

Before CLEMENT, HIGGINSON, and ENGELHARDT, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:*

Petitioner, Daniel Gilberto Fuentes-Barrera ("Barrera"), petitions this court for review of the Board of Immigration Appeals' ("BIA") order dismissing his appeal from the immigration judge's ("IJ") denial of his applications for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT"). Barrera first contends that, under *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), the IJ did not have jurisdiction over his claims because his Notice to Appear ("NTA") did not identify the time or

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

date of his initial removal hearing.  Alternatively, Barrera argues that this deficient NTA did not stop the accrual of time for purposes of post-conclusion voluntary departure and seeks a remand on that basis.  Barrera also contends that the BIA erred when it adopted the IJ's conclusion that Barrera failed to establish past persecution or a well-founded fear of future persecution on account of his membership in the particular social group "[m]en who are persecuted as a result of past experiences brought on by their kinship."  For the reasons that follow, we hold that the immigration court had jurisdiction over these removal proceedings and DENY Barrera's petition on the merits.

I.

A.

Barrera is a native and citizen of El Salvador.  In January 2017, Barrera entered the United States without proper documentation.  On February 23, 2017, Barrera was served with an NTA alleging that he was removable.  The NTA ordered him to appear before an IJ at a time and date yet to be determined.  Four days later, Barrera was served with a notice stating that his hearing with the IJ was scheduled for 1:00 p.m. on March 9, 2017.

Barrera appeared pro se on March 9, 2017, and was afforded a continuance so that he could seek counsel. Barrera appeared again before the IJ, through counsel, in June 2017 for his initial removal hearing.  At the hearing, Barrera sought asylum, withholding of removal, and protection under the CAT.  To support his application, he submitted a Human Rights Report about El Salvador.  This report describes the extortion, crime, and police corruption that is prevalent in parts of El Salvador.

Barrera alleged that he was a member of a particular social group consisting of "[m]en who are persecuted as a result of past experiences brought on by their kinship."  Barrera testified that he fled El Salvador because of "threats by the gangs and the police."  According to Barrera, these threats

No. 18-60805

began in September 2016, when Barrera was a freshman in a La Paz high school. Gang members at his high school threatened to kill him if he did not pay them $30,000. The gang members believed Barrera was wealthy because his aunt, whom Barrera lived with at the time, traveled frequently.

Barrera attempted to report these threats to school authorities, such as the principal and a police officer employed by the school. But when he reported the threats, the police officer showed Barrera a tattoo indicating gang affiliation and warned Barrera that he would hand Barrera over to the gang if Barrera reported the threats. Barrera also received a message through a student at Barrera's school that the gang would kill Barrera if he left the school without paying the $30,000.

At this time, Barrera made the decision to leave the school. Barrera took refuge with his aunt in another city about one hour away from his school. Barrera stayed "locked down in [his aunt's] house," did not go to school or visit friends, and remained safe during his month-long stay with his aunt. After staying with his aunt, Barrera left for the United States. Barrera does not know if the gang members who threatened him are still in his hometown.

Barrera testified that he had no choice but to flee El Salvador "[b]ecause the young people run a lot of risks" in the country and there was no place in the country where he could escape the gangs. Barrera did acknowledge, however, that his 17-year-old brother still lives with his mother in El Salvador.

B.

In October 2017, after hearing the evidence recounted above, the IJ denied Barrera's asylum application and his application for withholding of removal. The IJ then ordered that Barrera be removed to El Salvador. The IJ found Barrera "basically credible" but found that Barrera's testimony failed to establish past persecution or a well-founded fear of future persecution. The IJ

did not rule on Barrera's CAT claim because Barrera withdrew this claim following the hearing.

Barrera appealed the IJ's decision. He challenged both the IJ's substantive conclusions and the IJ's jurisdiction over his immigration proceedings. Specifically, Barrera moved to terminate all immigration proceedings against him for lack of jurisdiction and, alternatively, to remand the case for further fact-finding to determine his eligibility for post-conclusion voluntary departure in accordance with the Supreme Court's decision in *Pereira*. 138 S. Ct. 2105.

In November 2018, the BIA adopted the IJ's decision and dismissed Barrera's appeal. The BIA rejected Barrera's asylum claim because Barrera failed to establish (1) that he had suffered past persecution, (2) that any feared harm would be on account of a protected ground, (3) that he was a member of a cognizable particular social group, or (4) that relocation within El Salvador to evade future harm would not be reasonable. The BIA rejected Barrera's withholding of removal claim because Barrera's failure to meet the lower standard necessary to receive asylum necessarily meant that Barrera failed to show a clear probability of persecution. The BIA agreed that Barrera withdrew his CAT claim before the IJ. The BIA also denied Barrera's motion to terminate or remand the proceedings, noting that *Pereira* was a narrow holding applicable only to the question of whether the stop-time rule was triggered for purposes of cancellation of removal—an issue not relevant to Barrera because he does not seek cancellation of removal. Barrera filed a timely petition for review of the BIA's order.

## II.

The BIA had jurisdiction to consider Barrera's appeal under 8 C.F.R. § 1003.1(b)(3). This court has jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252(a)(1). Barrera timely petitioned for review of

No. 18-60805

the BIA's decision because he filed his petition on November 21, 2018, within thirty days of the BIA's decision.  8 U.S.C. § 1252(b)(1).  Venue is proper because the immigration proceedings took place in Houston, Texas.  *See* 8 U.S.C. § 1252(b)(2).

### III.

Barrera's petition for review of the BIA's decision raises two issues, one jurisdictional and one substantive.  First, Barrera contends that, under *Pereira*, 138 S. Ct. 2105, removal proceedings against him should be terminated for lack of jurisdiction and his case should be remanded so that the IJ can consider his eligibility for post-conclusion voluntary departure.  Second, Barrera contends that the BIA erred in dismissing his appeal of the IJ's denial of his applications for asylum and withholding of removal.  For the reasons below, we find that the IJ had jurisdiction and deny Barrera's petition on the merits.

We review the BIA's decision and, to the extent the BIA's decision adopts the IJ's reasoning, we also review the IJ's decision.  *Shaikh v. Holder*, 588 F.3d 861, 863 (5th Cir. 2009).  We review the BIA's legal conclusions de novo and its findings of fact for substantial evidence.  *Id.*

### A.

The BIA rejected Barrera's argument that, because he was served with an NTA that did not identify the time or date of his removal proceedings, the IJ lacked jurisdiction over Barrera's removal proceedings.  Barrera challenges that ruling, relying exclusively on the Supreme Court's holding in *Pereira*, 138 S. Ct. 2105.  In *Pereira*, the Supreme Court held that an NTA that does not state the time, date, or location of removal proceedings does not qualify as a

valid NTA for purposes of triggering the stop-time rule applicable to cancellation of removal.[1]

This court has refused to extend *Pereira* beyond the narrow context of the stop-time rule. In *Pierre-Paul v. Barr*, 930 F.3d 684 (5th Cir. 2019), this court clarified that *Pereira* "turned on the intersection of two statutory texts and the word 'under' that glued the stop-time rule to the time-and-place requirement." *Id.* at 690. *Pierre-Paul* explained that an NTA that does not specify the time or place of removal proceedings still initiates immigration proceedings because the relevant regulations only require inclusion of the time, date, and location of immigration proceedings "where practicable." *Id.* at 689–90, 693; *see* 8 C.F.R. § 1003.18. Thus, an NTA that does not identify the time or place of removal proceedings will pose a procedural problem "only when the government attempts to use a notice to appear that omits the time or place to satisfy one of the statutorily defined functions that are textually glued to 8 U.S.C. § 1229(a)." *Pierre-Paul*, 930 F.3d at 690.

In the alternative, this court held in *Pierre-Paul* that even if a defective NTA deprived the IJ of jurisdiction, that defect could be cured if the alien received a subsequent notice of hearing that contained the necessary information. *Id.* at 690–91. And, even if the defective NTA were incurable, the court in *Pierre-Paul* held that it would create a potential violation of a claims-processing rule, not a jurisdictional problem. *Id.* at 691–93.

Here, Barrera was served with an NTA that did not specify the time and date of his initial removal hearing. Four days later, Barrera received a notice identifying the time and date of the hearing. Barrera ultimately conceded

---

[1] Only aliens who have accrued ten years of continuous physical presence in the United States are eligible for cancellation of removal. But the accrual of time stops when the alien is served with an NTA "'under [8 U.S.C. §] 1229(a),'" which requires that an NTA specify the time and place of the removal hearing. 138 S. Ct. at 2109–11 (quoting § 1229b(d)(1)(A)).

removability and did not object to the NTA.  As this court held in *Pierre-Paul*, an NTA that does not identify the time and date of an alien's initial removal hearing does not impact the IJ's jurisdiction over removal proceedings.  Even if jurisdiction were impacted by the nature of the NTA, any defect in the NTA was cured by the later-served notice containing the date and time of Barrera's initial removal hearing.  For these reasons, the BIA did not err when it denied Barrera's motion to terminate his removal proceedings for lack of jurisdiction.  We therefore DENY Barrera's motion to terminate proceedings and confirm that the NTA vested the IJ with jurisdiction over Barrera's removal proceedings.

In the alternative, Barrera relies on *Pereira* for the proposition that the NTA he received did not stop the accrual of time for purposes of qualifying for post-conclusion voluntary departure.  Therefore, Barrera seeks a remand to the IJ for further fact-finding regarding his eligibility for post-conclusion voluntary departure.

Post-conclusion voluntary departure is a mechanism by which an alien may be permitted to voluntarily depart the United States at the conclusion of removal proceedings if, inter alia, he was "physically present in the United States for a period of at least one year immediately preceding the date the [NTA] was served under section 1229(a)."  8 U.S.C. § 1229c(b)(1)(A).  We addressed an identical argument in *Martinez-Lopez v. Barr*, 943 F.3d 766 (5th Cir. 2019).  There, we held that "*Pierre-Paul* forecloses [this] argument" where a later-served notice of hearing cures any defects in the initial NTA.  *Id.* at 770 n.1.  That is just what happened here.  Barrera was served with a notice indicating the time and date of his initial removal hearing just four days after receiving the initial NTA.  This later-served notice cured any defects in the

initial NTA.[2]  Therefore, *Pierre-Paul* precludes Barrera's argument.  930 F.3d at 690–91.  We therefore DENY Barrera's motion to remand for further proceedings.

### B.

Given the conclusion that the IJ had jurisdiction, we turn to the merits of Barrera's petition.  Barrera contends that he is entitled to asylum and withholding of removal because he has demonstrated past persecution and a well-founded fear of future persecution on account of membership in a particular social group.[3]

This court reviews factual findings under a substantial-evidence standard.  *Zhang v. Gonzales*, 432 F.3d 339, 344 (5th Cir. 2005).  "Under this standard, reversal is improper unless we decide not only that the evidence supports a contrary conclusion, but also that the evidence compels it."  *Id.*  "The alien must show that the evidence was so compelling that no reasonable factfinder could conclude against it."  *Wang v. Holder*, 569 F.3d 531, 537 (5th Cir. 2009); *see* § 1252(b)(4)(B).

The Attorney General has discretion to grant asylum to refugees.  *Milat v. Holder*, 755 F.3d 354, 360 (5th Cir. 2014).  To qualify for asylum as a refugee, an applicant must demonstrate either past persecution or a reasonable, well-founded fear of future persecution on account of one of the five grounds enumerated in 8 U.S.C. § 1101(a)(42)(A), including, as relevant here, "membership in a particular social group."  *Id.*; *see* 8 U.S.C. § 1158(b)(1)(B)(i).

Substantial evidence supports the BIA's and IJ's conclusion that Barrera has not demonstrated past persecution.  Persecution is "[t]he infliction of

---

[2] We do not reach the broader question of whether, if the NTA's potential defect had not been cured, *Pereira* and *Pierre-Paul* would require us to hold that the NTA did not stop the accrual of time for purposes of voluntary departure.  *See Pierre-Paul*, 930 F.3d at 689–90.

[3] Barrera concedes that he withdrew his application for CAT protection before the IJ and does not challenge the BIA's conclusion that he did so.

suffering or harm" that "need not be physical, but may take other forms, such as the deliberate imposition of severe economic disadvantage or the deprivation of liberty, food, housing, employment or other essentials of life." *Eduard v. Ashcroft*, 379 F.3d 182, 187 (5th Cir. 2004). Persecution cannot be based on "economic extortion," *Ramirez-Mejia v. Lynch*, 794 F.3d 485, 493 (5th Cir. 2015), or "mere denigration, harassment, and threats," *Eduard*, 379 F.3d at 188.

At his immigration hearing, Barrera described incidents of past extortion, threats, and isolation. Most concerning, Barrera described receiving a death threat that was communicated through a classmate. This death threat was not accompanied by violence. Because we cannot conclude that every reasonable fact-finder would be compelled to find that Barrera was persecuted under these circumstances, the BIA and IJ did not err when they found that Barrera did not suffer past persecution. *See Eduard*, 379 F.3d at 187 & n.4; *Ramirez-Mejia*, 794 F.3d at 493; *Tesfamichael v. Gonzales*, 469 F.3d 109, 116 (5th Cir. 2006); *Pirmuhammad v. Ashcroft*, 122 F. App'x 132, 132 (5th Cir. 2005) (unpublished) (holding that death threats, without more, are not persecution); *Chamorro v. Ashcroft*, 119 F. App'x 608, 608 (5th Cir. 2004) (unpublished) (same); *Zapeta v. Ashcroft*, 103 F. App'x 857, 857 (5th Cir. 2004) (unpublished) (same); *Torres v. Ashcroft*, 88 F. App'x 706, 706 (5th Cir. 2004) (unpublished) (same); *see also Wang*, 569 F.3d at 536–37.

Substantial evidence also supports the BIA's and IJ's conclusion that Barrera has not demonstrated a reasonable, well-founded fear of future persecution. *See Milat*, 755 F.3d at 360. Proving a well-founded fear of future persecution requires a petitioner to "show that a reasonable person in the same

circumstances would fear persecution if deported."[4] *Jukic v. INS*, 40 F.3d 747, 749 (5th Cir. 1994).

Barrera's fear of future persecution is based solely on the incidents of threats and extortion recounted above. Given that these incidents, without more, do not rise to the level of persecution there is not enough evidence to compel reversing the BIA's or IJ's finding that Barrera lacks a reasonable, well-founded fear of future persecution. This is particularly true given that Barrera's 17-year-old brother remains in El Salvador and the record does not indicate that he has suffered any persecution.

Because substantial evidence supports the BIA's and IJ's conclusion that Barrera has not established past persecution or a well-founded fear of future persecution, we do not consider whether any persecution was on account of a protected ground, such as Barrera's membership in a particular social group.

The BIA did not err when it dismissed Barrera's appeal because Barrera has not demonstrated past persecution and does not have a well-founded fear of future persecution. We DENY Barrera's petition for review with respect to his asylum claim.

Because Barrera has failed to demonstrate the well-founded fear of future persecution required for asylum eligibility, he has necessarily also failed to meet the higher standard necessary to demonstrate eligibility for withholding of removal. *See Faddoul v. I.N.S.*, 37 F.3d 185, 188 (5th Cir. 1994). We DENY Barrera's petition for review with respect to his withholding-of-removal claim.

---

[4] A petitioner who has not established past persecution must show that it would not be reasonable to relocate within his home country, unless the feared persecution "is by a government or is government-sponsored." 8 C.F.R. § 1208.13(b)(3)(i). We take Barrera's assertion that a police officer was involved in the alleged extortion as true and therefore do not require Barrera to show that internal relocation would be unreasonable.

No. 18-60805

IV.

For the reasons stated above, we hold that the IJ had jurisdiction over these removal proceedings and DENY Barrera's petition for review.