# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-60216

ARACELY DEL CARMEN ALVARENGA-AMAYA; JOSE ISMAEL ALVARENGA-AMAYA; HEISEL PAMELA ALVARENGA-AMAYA,

Petitioners

v.

WILLIAM P. BARR, U. S. ATTORNEY GENERAL,

Respondent

United States Court of Appeals
Fifth Circuit

**FILED**

July 16, 2020

Lyle W. Cayce
Clerk

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A208 751 712
BIA No. A208 751 713
BIA No. A208 751 714

Before KING, GRAVES, and OLDHAM, Circuit Judges.

PER CURIAM:*

Aracely Del Carmen Alvarenga-Amaya, Jose Ismael Alvarenga-Amaya, and Heisel Pamela Alvarenga-Amaya are citizens of El Salvador who petition this court for review of an order of the Board of Immigration Appeals denying their applications for asylum, withholding of removal, and relief under the Convention Against Torture. The petitioners also seek review of the Board's

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

denial of their motion to terminate the proceedings, asserting that their notices to appear were deficient because the notices failed to specify the dates and times of their removal hearings.

## I.

## A.

Aracely Del Carmen Alvarenga-Amaya, Jose Ismael Alvarenga-Amaya, and Heisel Pamela Alvarenga-Amaya are children from El Salvador who entered the United States without valid entry documents and were subsequently charged with being removable. The Department of Homeland Security issued them notices to appear (NTAs). These NTAs did not contain a date and time for a hearing but instead stated that this information was "To Be Determined." The petitioners later received a notice of hearing which provided the time and place for their hearing. In response to the NTAs, the petitioners filed applications for asylum, withholding of removal, and Convention Against Torture (CAT) relief.

The petitioners claimed that their father, Jose David Alvarenga, was murdered by MS-18, a gang in El Salvador in 2014; that their mother and grandmother reported this to the police, which resulted in the investigation and arrests of MS-18 members; and that the gang began harassing their family, banged on their door on one occasion, and issued death threats. On these facts, the petitioners claim that they are entitled to relief based on their membership in a particular social group, i.e. being immediate family members of their deceased father.

At a hearing before an immigration judge, Aracely stated that she left El Salvador because she feared MS-18 after they killed her father for failing to pay the gang's extortionate demands. She reiterated that her mother reported the murder, which led to investigations and two arrests, and that MS-18 then

came to their house to "beat on the front gate" and threaten her mother with death. Although her mother reported the threats and harassment, the police did not come to the house in response to those reports. Aracely also said that her mother received phone calls stating that members of MS-18 "were going to kill her and then that they were going to kill us." Consequently, the petitioners' mother subsequently fled El Salvador, and the petitioners then moved into their maternal grandmother's house. While they avoided harassment at their grandmother's home, the threats resumed when their mother returned to El Salvador.

**B.**

Although the immigration judge found the petitioners credible, he concluded that they failed to establish that they were persecuted on account of their status as members of their father's family. Instead, he determined that the harassment and threats resulted from the mother's collaboration with police, which precipitated both the investigation and the arrest of MS-18 members. The immigration judge also determined that the petitioners failed to establish past persecution, or a fear of future persecution because they were "no different than anyone else in El Salvador who is afraid of the gangs." Accordingly, the immigration judge denied their applications for asylum or withholding of removal. CAT relief was also deemed inappropriate because there was no "evidence the government of El Salvador attempted or acquiesced or was willfully blind to the torture of the [petitioners] or that they would [be] in the future."

The Board of Immigration Appeals (BIA) dismissed the petitioners' appeal. The BIA agreed with the immigration judge's conclusion that the petitioners failed to establish that they were persecuted on account of a protected ground—being members of their father's family—and that they were

No. 19-60216

instead threatened as a result of their mother's cooperation with police. The BIA also ruled that the petitioners were unlikely to be tortured in El Salvador because the police investigated their father's murder and arrested MS-18 members. Consequently, the BIA denied the petitioners' asylum, withholding-of-removal, and CAT claims.

The BIA also rejected the petitioners' argument that *Pereira v. Sessions*, 138 S. Ct. 2105 (2018)—a Supreme Court decision released after the immigration judge entered judgment—required remand or termination of the removal proceedings on jurisdictional grounds. *Pereira* states that an NTA should specify a date and time, but the petitioners' NTAs did not do so. The BIA determined, however, that *Pereira*'s holding does not apply to removal proceedings like the present case. Because a subsequent notice of hearing contained the date and time of the proceedings, the BIA ruled that the immigration court had jurisdiction over the removal proceedings. The petitioners timely petitioned this court for review.

**II.**

"When reviewing a BIA decision, questions of law are reviewed de novo . . . ." *Vetcher v. Barr*, 953 F.3d 361, 366 (5th Cir. 2020) (quoting *Vazquez v. Sessions*, 885 F.3d 862, 870 (5th Cir. 2018)), *petition for cert. filed*, No. 19-1437 (U.S. June 26, 2020). "In removal proceedings," a notice to appear must specify "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1). "In *Pereira*, the Supreme Court held that an NTA that does not specify the time and place at which the proceedings will be held does not trigger the stop-time rule." *Yanez-Pena v. Barr*, 952 F.3d 239, 243 (5th Cir. 2020) (citing *Pereira*, 138 S. Ct. at 2113-14), *petition for cert. filed*, No. 19-1208 (U.S.

Apr. 8, 2020).[1] In light of this holding, we soon confronted the related question of whether immigration courts have "jurisdiction over removal proceedings when the original NTA did not include the time and place of the initial hearing but a subsequent notice of hearing did include that information." *Id.* at 244 (citing *Pierre-Paul v. Barr*, 930 F.3d 684, 688 (5th Cir. 2019), *cert. denied*, No. 19-779, 2020 WL 1978950 (U.S. Apr. 27, 2020)).

We concluded that, if the original NTA is "defective, 'the immigration court [may] cur[e] the defect by subsequently sending a notice of hearing that include[s] the time and date of the hearing.'" *Id.* at 244 (quoting *Pierre-Paul*, 930 F.3d at 689). "We reasoned that the 'written notice,' referred to in § 1229(a) as '*a* notice to appear,' does not require that all the necessary items be contained in a single document, particularly since 'words importing the singular include and apply to several persons, parties, or things.'" *Id.* at 244-45 (footnote omitted) (first quoting § 1229(a)(1); then quoting *Pierre-Paul*, 930 F.3d at 691). As a result, "a defective notice to appear may be cured with a subsequent notice of hearing," because this "two-step process comports with relevant statutory language." *Pierre-Paul*, 930 F.3d at 690-91.

Here, the petitioners argue that the immigration court lacked jurisdiction because their original NTAs lacked dates and times for their hearings. This argument is foreclosed by our ruling in *Pierre-Paul*. *See Pierre-Paul*, 930 F.3d at 689; *see also Yanez-Pena*, 952 F.3d at 244. The petitioners do

---

[1] "Nonpermanent residents . . . who are subject to removal proceedings and have accrued 10 years of continuous physical presence in the United States[] may be eligible for a form of discretionary relief known as cancellation of removal." *Pereira*, 138 S. Ct. at 2109. The stop-time rule provides that the "period of continuous physical presence is 'deemed to end . . . when the alien is served a notice to appear.'" *Id.* (alteration in original) (quoting 8 U.S.C. § 1229b(d)(1)).

not dispute that they received a subsequent notice of hearing that included the time and date of their hearing. Therefore, their defective NTAs were cured.

Accordingly, the immigration court did not lack jurisdiction.

## III.

## A.

"When considering a petition for review, this court has the authority to review only the BIA's decision, not the [immigration judge]'s decision, unless the [immigration judge]'s decision has some impact on the BIA's decision." *Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009). "We review [the BIA's] decision for substantial evidence and reverse only if the evidence is so compelling that no reasonable fact finder could fail to find the petitioner statutorily eligible for relief." *Munoz-Granados v. Barr*, 958 F.3d 402, 406 (5th Cir. 2020) (alteration in original) (quoting *Qorane v. Barr*, 919 F.3d 904, 909 (5th Cir. 2019)).

"To qualify for asylum as a refugee, an applicant must demonstrate either past persecution or a reasonable, well-founded fear of future persecution on account of one of the five grounds enumerated in 8 U.S.C. § 1101(a)(42)(A) . . . ." *Id.* Therefore, "an alien must 'establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least *one central reason for persecuting* the applicant.'" *Revencu v. Sessions*, 895 F.3d 396, 402 (5th Cir. 2018) (quoting *Shaikh v. Holder*, 588 F.3d 861, 864 (5th Cir. 2009)). "The statutorily protected ground cannot be 'incidental, tangential, superficial, or subordinate to another reason for harm.'" *Id.* (quoting *Shaikh*, 588 F.3d at 864).

The petitioners have not demonstrated that "the evidence is so compelling that no reasonable fact finder could fail to find [them] statutorily eligible for relief." *Munoz-Granados*, 958 F.3d at 406. There is substantial

evidence in the record indicating that the gangs' threats resulted from the petitioners' mother's cooperation with police, which led to the arrest of two gang members. And the petitioners cite no compelling evidence establishing that they were singled out for persecution as a result of their relationship to their father, rather than in retaliation for their mother's cooperation with the police. *Cf. Ramirez-Mejia v. Lynch*, 794 F.3d 485, 493 (5th Cir. 2015) ("[T]here is no reason to suppose that those who persecute to obtain information also do so out of hatred for a family"); *cf. also Sealed Petitioner v. Sealed Respondent*, 829 F.3d 379, 384 (5th Cir. 2016) (stating that determination of "[a] persecutor's actual motive" is reviewed for substantial evidence (citation omitted)); *Chinwendu v. Ashcroft*, 112 F. App'x 982, 983 (5th Cir. 2004) ("[V]iolence against a family member must have created a pattern of persecution closely tied to the asylum applicant.").[2] Accordingly, the petitioners are not eligible for asylum relief.

## B.

Under federal law, "the Attorney General may not remove an alien to a country in which there is a clear probability that the alien's life or freedom will be threatened based upon the alien's race, religion, nationality, membership in a particular social group, or political opinion." *Morales v. Sessions*, 860 F.3d 812, 817 (5th Cir. 2017). "This standard 'is even higher than the standard for asylum.'" *Id.* (quoting *Orellana-Monson v. Holder*, 685 F.3d 511, 518 (5th Cir.

---

[2] The Fourth Circuit's decision in *Hernandez-Avalos v. Lynch*, 784 F.3d 944 (4th Cir. 2015), is distinguishable. The record here contains substantial evidence that the petitioners faced threats and harassment as a result of their mother's independent actions (i.e., her cooperation with the police), rather than the petitioners' relationship to their father. By contrast, in *Hernandez-Avalos*, the "[petitioner's] relationship to her son is why she, and not another person, was threatened with death if she did not allow him to join Mara 18, and the gang members' demands leveraged her maternal authority to control her son's activities." 784 F.3d at 950.

2012)). Accordingly, "one who fails to show entitlement to asylum fails to show entitlement to withholding of removal." *Munoz-Granados*, 958 F.3d at 408.

Because substantial evidence supports the BIA's finding that the petitioners are not entitled to asylum, they are similarly not entitled to withholding of removal. While the petitioners argue that the standard of causation is more relaxed, they still fail to establish that "the evidence is so compelling that no reasonable fact finder could fail to find [them] statutorily eligible for relief." *Munoz-Granados*, 958 F.3d at 406. Moreover, the petitioners offer no compelling explanation for why a withholding-of-removal claim should be analyzed under a lower causation standard than an asylum claim, and this court has long analyzed asylum and withholding-of-removal claims congruently. *See, e.g.*, *id.* at 408; *Morales*, 860 F.3d at 817; *Orellana-Monson*, 685 F.3d at 518; *Efe v. Ashcroft*, 293 F.3d 899, 906 (5th Cir. 2002); *Faddoul v. INS*, 37 F.3d 185, 190 n.7 (5th Cir. 1994).

## IV.

We review the denial of a CAT claim for substantial evidence. *See Munoz-Granados*, 958 F.3d at 406 (citing *Qorane*, 919 F.3d at 909). "For a petitioner to be entitled to CAT relief, he or she must show that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Id.* at 408 (quoting *Garcia v. Holder*, 756 F.3d 885, 891 (5th Cir. 2014)). "Torture includes only pain or suffering inflicted by or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.* (quoting *Qorane*, 919 F.3d at 911).

The petitioners have failed to establish that they would likely be tortured, by or with the acquiescence of a public official, if they returned to El Salvador. The immigration judge found that "[t]here is simply no evidence that the [petitioners] would be tortured" if they returned to El Salvador, and the

No. 19-60216

petitioners' testimony is consistent with this conclusion. The police responded to the petitioners' mother's initial pleas, investigated their father's murder, and arrested and imprisoned two gang members, none of which suggests that the petitioners are likely to be tortured upon their return. Although the petitioners note that the police failed to respond to some of their MS-18-related complaints, even "potential instances of violence committed by non-governmental actors against citizens, together with speculation that the police might not prevent that violence, are generally insufficient to prove government acquiescence." *Garcia*, 756 F.3d at 892.

## V.

For the foregoing reasons, the petition for review is DENIED.