[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14370
Non-Argument Calendar

_____

Agency No. A206-528-820

TOMAS MORALES HERNANDEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(September 13, 2019)

Before TJOFLAT, JORDAN and HULL, Circuit Judges.

PER CURIAM:

Tomas Morales Hernandez, represented by counsel, seeks review of the Board of Immigration Appeals' ("BIA") decision: (1) affirming the Immigration Judge's ("IJ") denial of his application for cancellation of removal; and (2) denying his motion to remand his removal proceedings. In his petition for review, Hernandez argues that the IJ did not have jurisdiction over his removal proceedings because his Notice to Appear ("NTA") omitted the date and time of his initial hearing at Krome Service Processing Center ("Krome"), even though a subsequent notice of hearing served on Hernandez a few weeks later contained that information, and Hernandez, along with his counsel, appeared at his hearing.

Alternatively, Hernandez argues that the BIA erred in affirming the IJ's decision and in denying his motion to remand because he demonstrated that he was of good moral character and that his U.S.-born children would experience exceptional and extremely unusual hardship if he was removed to Mexico. Hernandez also argues that he was deprived of his right to due process because of errors in the transcript of his hearing on his application for cancellation of removal.

After review, we conclude, based on Perez-Sanchez v. United States Attorney General, ___ F.3d ___, No. 18-12578, 2019 WL 3940873, at *7 (11th Cir. Aug. 21, 2019), that the omissions in Hernandez's NTA did not deprive the IJ of jurisdiction. As to the merits, we conclude that we lack appellate jurisdiction to review Hernandez's challenge to the BIA's decisions because they were based on

2

discretionary determinations and that Hernandez has not raised a colorable due process claim.  Accordingly, we deny in part and dismiss in part Hernandez's petition for review.

## I.  FACTUAL BACKGROUND

### A.    Illegal Entry and Criminal History

Hernandez, a native and citizen of Mexico, entered the United States without inspection in 2001.  Since then, Hernandez has lived and worked in Florida, where he and his wife have two young, U.S.-citizen children.  Hernandez's wife, who is also a citizen of Mexico, is a uterine cancer survivor and is currently in remission. Their younger son was diagnosed with an eye condition called red light reflex, and their older son suffers from earaches.  Hernandez works seasonally in construction and as an agricultural worker but does not have a stable income.  His children receive Medicaid assistance and food stamps.

Hernandez paid income taxes beginning in 2011.  He admitted that in 2014 he and his wife filed separate tax returns, each claiming one son as a dependent, and that he did not indicate on his tax return that he was married.

Hernandez's criminal history is somewhat unclear, but the parties agree that in 2007 he was charged with burglary of a conveyance and petit theft in Hillsborough County, Florida, after he stole a case of beer from a car.  Hernandez was not convicted of these offenses until December 2010, at which time he was

3

sentenced to time-served plus 30 days in jail.  In his removal proceedings, Hernandez admitted that after his 2007 arrest, he pled guilty and paid a bond, but he could not remember if he failed to return to court or absconded and could not explain the four-year gap between his 2007 arrest and 2010 conviction.

Meanwhile, in October 2010, after a car accident, Hernandez was arrested for driving under the influence ("DUI") and driving without a valid driver's license in Hillsborough County.  In January 2011, Hernandez was found guilty of DUI, and the driver's license charge was dismissed.  After Hernandez violated his state probation on the DUI conviction, Immigration and Customs Enforcement arrested Hernandez in 2014.

## B.     Notice to Appear

On February 6, 2014, Hernandez was detained in the custody of the Department of Homeland Security ("DHS") at Krome.  On that date, DHS served Hernandez with an NTA, which charged him with removability: (1) under the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled; (2) under INA § 212(a)(7)(A)(i), 8 U.S.C. § 1182(a)(7)(A)(i), for being an immigrant not in possession of a valid, unexpired immigrant visa or other entry document; and (3) under INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182 (a)(2)(A)(i)(I), as an alien who was convicted of acts which constituted the essential elements of a

4

crime involving moral turpitude.  The NTA specified that Hernandez was ordered to appear before an Immigration Judge at Krome on a date "to be set" and at a time "to be set."

## C.    Subsequent Notices of Hearings

On February 20, 2014, Hernandez, who was still detained at Krome, was served with a notice of hearing ("NOH") from the immigration court, which stated that a hearing at Krome was set for February 25, 2014 at 9:00 a.m.  Hernandez was present at the February 25, 2014 hearing, and his newly retained counsel asked via telephone that the hearing be reset.  The IJ granted the request, and Hernandez was personally served with another copy of the original NTA and also a new NOH setting a master hearing at Krome for February 27, 2014 at 8:00 a.m.  At the February 27, 2014 hearing, Hernandez was released on bond, and a third notice of hearing was served on Hernandez's counsel setting the master hearing for March 31, 2014 at 8:00 a.m. in Miami, Florida.

## D.    Removal Hearing

After a change of venue to Orlando, Florida, Hernandez's removal hearing ultimately was held on October 15, 2014.  Hernandez, represented by counsel, admitted the factual allegations in the NTA, stood silent on the charges of entering the United States without admission or parole and without a valid, unexpired immigrant visa or other entry document, and denied the charge of being convicted

5

of a crime involving moral turpitude.  The IJ sustained the first two charges, but not the charge for a crime involving moral turpitude.

### E.    Cancellation of Removal

Hernandez filed an application for cancellation of removal based on hardship to his U.S.-citizen children and for adjustment of status.[1]  Hernandez argued, inter alia, that his younger son's eye condition required monitoring and testing for vision abnormalities, such as cataracts, glaucoma or retinoblastoma, some of which could be life-threatening or require corrective surgery, and that, without proper documentation, his U.S.-born son would not have access to healthcare services in Mexico.

After a merits hearing, at which Hernandez and his wife testified, the IJ denied Hernandez's application for cancellation of removal.  The IJ found that, although Hernandez had been continuously physically present in the United States for at least ten years and had not been convicted of a crime involving moral turpitude, Hernandez could not satisfy the statutory requirements: (1) that he was a person of good moral character; or (2) that his qualifying family members—his children—would experience exceptional and extremely unusual hardship.  The IJ

---

[1]Hernandez also applied for withholding of removal and relief under the Convention Against Torture ("CAT") based on his membership in a particular social group, which the IJ denied.  Because Hernandez's counseled brief offers no substantive arguments concerning those claims, we do not address them further.  See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

stated that he had "significant issues with [Hernandez's] overall credibility, especially as it relate[d] to his inability to remember much of anything about his arrests, failure to appear for his criminal court hearing, and his convictions."

Alternatively, the IJ denied Hernandez's application for cancellation as a matter of discretion. The IJ explained that "even if . . . respondent met the hardship requirement," the IJ denied relief as a matter of discretion because of Hernandez's history of alcohol abuse, the fact that he "was arrested, processed, and released on a bond, but failed to appear for his hearing," his failure to pay taxes between 2001 and 2010, and his failure to properly file a joint tax return with his wife correctly claiming both sons in 2014. The IJ stated that Hernandez had not "demonstrated a willingness or ability to follow certain of this society's basic requirements, such as obeying the criminal code, paying the taxes owed, driving with a valid driver's license, and appearing for all criminal court hearings as required, and following through with his conditions of probation," and stated that "[t]hese factors undercut [Hernandez's] claim of acculturation and membership in this society."

## F.    BIA Appeal

Hernandez appealed to the BIA, arguing that he had submitted sufficient evidence of his good moral character and of the exceptional and extremely unusual

7

hardship to his children if he was removed to Mexico.  Hernandez also argued that he merited relief as a matter of discretion.

While his appeal was pending, Hernandez filed a motion to remand his case to the IJ to reconsider his application for cancellation of removal in light of new evidence that his younger son had been diagnosed with developmental and communicative delays.  Hernandez also argued the BIA should remand his case because the transcript of his merits hearing was incomplete and inadequate, which amounted to a denial of due process.

The BIA dismissed Hernandez's appeal and denied his motion to remand. The BIA expressly adopted and affirmed the IJ's decision denying Hernandez cancellation of removal.  The BIA agreed that Hernandez did not show that his removal would result in an exceptional and extremely unusual hardship to his children.  Specifically, the BIA determined that Hernandez had not shown that his younger son would be unable to receive medical treatment in Mexico, even if that treatment was more expensive, or that Hernandez would be unable to find work in Mexico.  The BIA agreed with the IJ's finding that Hernandez was statutorily ineligible for cancellation of removal because he did not meet his burden of showing the requisite good moral character and also affirmed the IJ's denial of Hernandez's application as an exercise of discretion.

8

As to Hernandez's due process claim that his hearing transcript was deficient, the BIA found that Hernandez had not pointed to specific evidence or testimony that would have otherwise been presented if there had not been transcription errors or shown how any transcription errors made a difference to the outcome of his case.

With respect to Hernandez's motion to remand, the BIA found that, although the new evidence of his son's developmental delays was unavailable at the time of the IJ's hearing, Hernandez had not shown that the evidence would have affected the outcome of the case. The BIA explained that the new evidence did not show that Hernandez's son would not receive treatment in Mexico, but only that the treatment would not be comparable to the treatment available in the United States. Additionally, the BIA explained that the new evidence "did not impact the Immigration Judge's findings that [Hernandez] did not establish the requisite good moral character or that he does not deserve a favorable exer[c]ise of discretion in light of the adverse factors."

## II.  DISCUSSION

### A.    Omissions in the Notice to Appear

On appeal and for the first time, Hernandez argues that the immigration court did not have jurisdiction over his removal proceedings because his NTA omitted the date and time of his first removal hearing at Krome. In support of his

9

jurisdictional argument, Hernandez cites the Supreme Court's recent decision in Pereira v. Sessions, 585 U.S. ___, 138 S. Ct. 2105 (2018). We review subject matter jurisdiction de novo. Martinez v. U.S. Att'y Gen., 446 F.3d 1219, 1221 (11th Cir. 2006).

This Court recently addressed the same argument Hernandez raises here. In Perez-Sanchez, the alien, relying on Pereira, argued that the IJ "never had jurisdiction over his removal case," because his NTA "did not include either the time or date of his removal hearing." Perez-Sanchez, ___ F.3d at ___, 2019 WL 3940873, at *1. This Court determined that the alien's NTA was defective under INA § 239(a)(1), 8 U.S.C. § 1229(a)(1), because it did not include the hearing's date and time. Id. at ___, 2019 WL 3940873, at *4. However, this Court then concluded that the defect did not deprive the agency of jurisdiction over the alien's removal proceedings because the "time-and-place requirement" in INA § 239(a)(1), 8 U.S.C. § 1229(a)(1), does not "create a jurisdictional rule." Id. at ___, 2019 WL 3940873, at *4.[2]

---

[2]In a provision entitled "Initiation of removal proceedings," the INA requires that an alien in removal proceedings be given a written notice to appear specifying certain information about the proceedings, including, among other things, the "nature of the proceedings," the "legal authority under which the proceedings are conducted," the "charges against the alien," and that the alien may secure his or her own representation (and include a current list of available pro bono counsel the alien may contact). INA § 239(a)(1)(A)-(G), 8 U.S.C. § 1229(a)(1)(A)-(G). The notice to appear must also include the "time and place at which the proceedings will be held." INA § 239(a)(1)(G)(i), 8 U.S.C. § 1229(a)(1)(G)(i). But this provision of the INA does not speak in terms of vesting jurisdiction.

10

In so holding, this Court joined eight other Circuits that have rejected the argument that Pereira pronounced a broad jurisdictional rule and have concluded that the omission of the time and place of the removal hearing from an NTA does not deprive the immigration court of jurisdiction over removal proceedings.  See Pierre-Paul v. Barr, 930 F.3d 684, 689-90 (5th Cir. 2019); United States v. Cortez, 930 F.3d 350, 363-65 (4th Cir. 2019); Nkomo v. Att'y Gen, 930 F.3d 129, 133-34 (3d Cir. 2019); Ali v. Barr, 924 F.3d 983, 986 (8th Cir. 2019); Ortiz-Santiago v. Barr, 924 F.3d 956, 958, 962-64 (7th Cir. 2019); Banegas Gomez v. Barr, 922 F.3d 101, 105, 110-12 (2d Cir. 2019); Karingithi v. Whitaker, 913 F.3d 1158, 1160-61 (9th Cir. 2019); Hernandez-Perez v. Whitaker, 911 F.3d 305, 314-15 (6th Cir. 2018).

The Perez-Sanchez Court also agreed with the Fourth, Fifth, and Seventh Circuits that the agency's regulation, 8 C.F.R. § 1003.14,[3] "despite its language,

---

[3]Under 8 C.F.R. § 1003.14, entitled "Jurisdiction and commencement of proceedings," "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." Id. § 1003.14(a). The regulations define "charging document" as a "written instrument which initiates a proceeding before the Immigration Judge." Id. § 1003.13. The three documents given as examples of a "charging document" are "a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien." Id. The regulations list the information the Service must include in the notice to appear, such as the nature of the proceedings, the legal authority under which the proceedings are conducted, and the charges against the alien. However, this list does not include the time and place of the initial hearing. Id. § 1003.15(b). Rather, the regulations require the Service to "provide in the Notice to Appear, the time, place and date of the initial removal hearing, where practicable." Id. § 1003.18(b) (emphasis added). However, "[i]f that information is not contained in the Notice to Appear, the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing." Id.

11

sets forth not a jurisdictional rule but a claim-processing one." ___ F.3d at ___, 2019 WL 3940873, at *5-6 (explaining that "an agency cannot fashion a procedural rule to limit jurisdiction bestowed upon it by Congress"); see also Pierre-Paul, 930 F.3d at 691-93; Cortez, 930 F.3d at 358-62; Ortiz-Santiago, 924 F.3d at 963-64.  Having determined that "the IJ and the BIA properly exercised jurisdiction over [the alien's] removal hearing based on the authority conferred upon them by 8 U.S.C. § 1229a(a)(1)," this Court denied the alien's "petition for review as to his Pereira claim."  Perez-Sanchez, ___ F.3d at ___, 2019 WL 3940873, at *7.  To the extent the alien argued he was entitled to a remand "because his NTA violated the agency's claim-processing rules," the Court dismissed the alien's petition for lack of jurisdiction, explaining that the alien "failed to exhaust the claim before the agency."  Id.

In this case, under Perez-Sanchez, the IJ had jurisdiction over Hernandez's removal proceedings upon the filing of the initial NTA, despite the fact that the NTA did not specify the date and time of Hernandez's next hearing.  Accordingly, we deny Hernandez's petition as to his Pereira claim.  To the extent Hernandez argues that the NTA was defective under the agency's claim-processing rules, we dismiss his petition for lack of jurisdiction because, like the alien in Perez-Sanchez, Hernandez did not exhaust this issue before the BIA.

12

In any event, we note that the subsequent notice of hearing Hernandez received two weeks later did specify the date and time of his next hearing at Krome, and Hernandez and his attorney in fact appeared at that hearing and all other hearings throughout his removal proceedings.  The subsequent prompt notice of hearing cured the defect and made the defect harmless.  See, e.g., Pierre-Paul v. Barr, 930 F.3d 684, 690-91 (5th Cir. 2019) (concluding that a subsequently sent notice of hearing containing the time and place of the removal hearing cures any defect in the NTA); Banegas Gomez v. Barr, 922 F.3d 101, 112 (2d Cir. 2019) (same); In re Bermudez-Cota, 27 I. & N. Dec. 441, 447 (BIA 2018) (same).

## B.    Denial of Cancellation of Removal and Motion to Remand

Hernandez argues that the BIA abused its discretion in affirming the IJ's finding that he was not entitled to cancellation of removal as a matter of discretion and also in denying his motion to remand to consider new evidence.  We agree with the government that we lack jurisdiction to review these claims.[4]

The Attorney General has the discretion to cancel removal of a non-permanent alien who is inadmissible or removable from the United States if the alien establishes, among other requirements, that he was of good moral character and that removal would result in exceptional and extremely unusual hardship to his

---

[4]We review jurisdictional questions de novo.  Martinez v. U.S. Att'y Gen., 446 F.3d 1219, 1221 (11th Cir. 2006).

13

child, who is a U.S. citizen.  INA § 240A(b)(1)(B), (D), 8 U.S.C.

§ 1229b(b)(1)(B), (D).  This Court, however, lacks jurisdiction to review the BIA's

discretionary decisions that an alien failed to show good moral character under the

"catchall provision" of INA § 101(f), 8 U.S.C. § 1101(f), or failed to show that his

qualifying relative would suffer exceptional and extremely unusual hardship,

except to the extent his petition raises a constitutional claim or question of law.

See INA § 242(a)(2)(B), (D), 8 U.S.C. § 1252(a)(2)(B), (D); see also Jimenez-

Galicia v. U.S. Att'y Gen., 690 F.3d 1207, 1210-11 (11th Cir. 2012) (good moral

character); Martinez v. U.S. Att'y Gen., 446 F.3d 1219, 1221-22 (11th Cir. 2006)

(hardship).

Here, Hernandez does not raise any question of law or constitutional claim

with regard to the denial of his application for cancellation of removal.  Instead, he

merely argues that the BIA abused its discretion.  We lack jurisdiction to review

the BIA's purely discretionary determinations as to whether Hernandez showed

good moral character or satisfied the exceptional and extremely unusual hardship

standard for cancellation of removal.

The same is true for the BIA's denial of Hernandez's motion to remand,

which the BIA evaluated under the standards of a motion to reopen.  See Al Najjar

v. Ashcroft, 257 F.3d 1262, 1301 (11th Cir. 2001) (explaining that a  motion to

remand to introduce previously unavailable evidence is treated as a motion to

14

reopen); INA § 240(c)(7), 8 U.S.C. § 1229a(c)(7).  The BIA concluded, among other things, that Hernandez's new evidence of his son's developmental delays did not affect the IJ's discretionary determinations that he had not shown the requisite good moral character or that he deserved a favorable exercise of discretion.

We ordinarily have jurisdiction to review the denial of a motion to reopen or reconsider.  See Kucana v. Holder, 558 U.S. 233, 244-50, 130 S. Ct. 827, 835-38 (2010) (concluding that INA § 242(a)(2)(B), 8 U.S.C. § 1252(a)(2)(B), does not strip courts of jurisdiction to review denials of motions to reopen or reconsider made pursuant to 8 C.F.R. § 1003.2).  However, when, as here, review of the underlying order is precluded by the INA's jurisdiction-stripping provisions, our "jurisdiction to entertain an attack on that order mounted through filing of a motion to reopen" is also curtailed.  Patel v. U.S. Att'y Gen., 334 F.3d 1259, 1262 (11th Cir. 2003); see also Guzman-Munoz v. U.S. Att'y Gen., 733 F.3d 1311, 1313-14 (11th Cir. 2013).

For these reasons, to the extent Hernandez seeks review of the denial of cancellation of removal or the denial of his subsequent motion to remand, we dismiss his petition for lack of jurisdiction.

## C.    Due Process Claim

We retain jurisdiction under the INA to consider constitutional claims and questions of law and review constitutional claims concerning a deprivation of due

15

process de novo.  INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D); Martinez, 446

F.3d at 1221-22; Ali v. U.S. Att'y Gen., 443 F.3d 804, 808 (11th Cir. 2006).  For

this Court to possess jurisdiction pursuant to the constitutional claim exception, the

petitioner must allege "at least a colorable constitutional violation."  Arias v. U.S.

Att'y Gen., 482 F.3d 1281, 1284 (11th Cir. 2007) (internal quotation marks

omitted).  A colorable due process claim requires the alien to show that he was

deprived of liberty without due process and the asserted error caused him

substantial prejudice.  Lapaix v. U.S. Att'y Gen., 605 F.3d 1138, 1143 (11th Cir.

2010).  Because a petitioner has no constitutionally protected interest in purely

discretionary forms of relief, the failure to receive discretionary relief cannot

amount to a due process violation.  Scheerer v. U.S. Att'y Gen., 513 F.3d 1244,

1253 (11th Cir. 2008).

Here, Hernandez argues that he was denied due process because the

immigration court furnished him with an incomplete transcript of his hearing on

his application for cancellation of removal.  Hernandez claims he was prejudiced

by the deficient transcript because he was unable to properly appeal to the BIA.

Hernandez has no cognizable due process interest here, however, because

cancellation of removal is a discretionary form of relief.  See Scheerer, 513 F.3d at

1253.

16

In any event, even if Hernandez's claim was colorable, he did not show that he was substantially prejudiced by the deficient transcript.  Hernandez argues only that an accurate transcript would have shown he was an individual of good moral character and that his children would experience exceptional and extremely unusual hardship.  He does not make any argument as to the IJ's alternative basis for denying his application for cancellation of removal as a matter of discretion.  Therefore, Hernandez did not show that the outcome of his proceeding would have been different but for the alleged due process violation.

**PETITION DENIED IN PART AND DISMISSED IN PART.**