[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10711
Non-Argument Calendar
_____

Agency No. A208-887-010

JOSE ISIDRO RIVAS PALENCIA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(January 23, 2020)

Before WILSON, JILL PRYOR and HULL, Circuit Judges.

PER CURIAM:

Jose Isidro Rivas Palencia petitions for review of a Board of Immigration Appeals' ("BIA") decision. In its decision, the BIA denied Rivas Palencia's request to terminate his removal proceedings and also affirmed the immigration judge's order denying his application for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and relief under the United Nations Convention Against Torture ("CAT"). After careful consideration, we deny his petition.

## I.     FACTUAL BACKGROUND

Rivas Palencia, a citizen of Honduras, entered the United States without inspection on January 30, 2016. This appeal involves his applications for asylum, withholding of removal, and protection under the CAT.

## A.     After Entering the United States, Rivas is Served with a Notice to Appear.

Shortly after Rivas Palencia arrived in the United States, the Department of Homeland Security ("DHS") served him with a notice to appear ("NTA"), which charged him with being removable on the basis that he was an immigrant not in possession of a valid, unexpired immigrant visa or other entry document. *See* 8 U.S.C. § 1182(a)(7)(A)(i)(I). Although the NTA identified the location for the

initial hearing, it stated that the date and time of the hearing were "To Be Determined." AR at 334.[1]

About a week later, Rivas Palencia was served with a Notice of Hearing, which identified the date, time, and location for the initial hearing. At the hearing, Rivas Palencia acknowledged service of the NTA and conceded his removability.

## B.    Rivas's Applies for Asylum, Withholding of Removal, and Protection under the CAT.

After his initial hearing, Rivas Palencia filed an application for asylum and withholding of removal as well as protection under the CAT. To support his claims for asylum, withholding of removal, and CAT protection, Rivas Palencia testified at a hearing before the immigration judge, submitted an affidavit from his stepfather and mother, and filed various documentary evidence about his sisters' murders and reports about country conditions in Honduras.

Rivas Palencia testified that he fled Honduras for the United States because he feared that the family of a gang member would kill him. Approximately two years before Rivas Palencia came to the United States, two of his sisters were murdered in Honduras. They were murdered by Rudy Gonzalez, the boyfriend of one of his sisters, who was also a gang member. Gonzalez was ultimately convicted of murder and sentenced to 12 years' imprisonment. Although Gonzalez

---

[1] Citations to "AR" refer to the administrative record.

3

remained in prison, Rivas Palencia feared reprisals from Gonzalez's family. After Rivas Palencia's sisters were murdered, Gonzalez's uncle was murdered. According to Rivas Palencia, Gonzalez's family believed that he had murdered their uncle to avenge his sisters' murders. After the uncle's murder, Gonzalez's cousins drove by Rivas Palencia's house several times, threatening his life and yelling that their uncle's death "was not going to be in vain." AR 117. Rivas Palencia did not report these incidents to law enforcement in Honduras because he feared that his family would be in more danger if he did.

Rivas Palencia also testified that he feared returning to Honduras because "there are a lot of criminals" there who have control over "everything that happens." *Id.* at 118. He testified that in 2012—about four years before he came to the United States—he was approached about joining a gang. When he refused to join, gang members threatened him.

During the hearing, Rivas Palencia was asked why he had not moved to another region in Honduras. He responded that he had not wanted to leave his mother who continued to live in his hometown in Honduras. He also indicated that he could not safely live anywhere in Honduras because there were gangs and drug dealers throughout the country.

Rivas Palencia also provided the immigration judge with an affidavit from his stepfather and mother in Honduras explaining that Rivas Palencia came to the

4

United States because he feared for his life in Honduras. The affidavit began by addressing the murders of Rivas Palencia's sisters. The affidavit explained that after the sisters were "killed in a violent manner," the family "all live[d] in fear that something bad may happen to us." *Id.* at 138.

The affidavit also described how other gang members had threatened Rivas Palencia. The stepfather described an incident in which gang members tried to recruit Rivas Palencia. A group of "vandals" came to the house looking for Rivas Palencia. *Id.* The group wanted Rivas Palencia to join their gang and become a criminal. When Rivas Palencia refused, the group told him that they were going to kill him.

Rivas Palencia also submitted background materials on his sisters' murders, including their death certificates and several news articles about the murders. The articles explained that the sisters were attacked on a road and killed by Gonzalez and another man who were wielding machetes. The articles identified the motive for the crimes as "passion." *Id.* at 250.

Rivas Palencia also provided the immigration judge with background materials on Honduras, including documents prepared by the State Department, Human Rights Watch, and other organizations. These materials stated that Honduras suffered from "[p]ervasive societal violence," its levels of crime and violence were "critically high," and it had one of the highest murder rates in the

5

world.  *Id.* at 148, 270.  The materials discussed that gangs were prevalent throughout Honduras and that youth gangs known as "maras" used threats and violence to control poorer districts in towns and cities.  *Id.* at 286.  The materials also stated that the Honduran government lacked "sufficient resources to property respond to, investigate, and prosecute cases," which led to criminals being able to operate with "a high degree of impunity."  *Id.* at 270.

## C.  The Immigration Judge Denies Rivas Palencia's Applications, and the BIA Dismisses His Appeal.

In an oral ruling, the immigration judge denied Rivas Palencia's applications for asylum and withholding of removal and found he was not entitled to protection under the CAT.  Rivas Palencia appealed to the BIA.

Before the BIA, Rivas Palencia requested for the first time that the removal proceedings against him be terminated on the basis that the immigration court was never vested with jurisdiction.  Relying on the Supreme Court's recent decision in *Pereira v. Sessions*, 138 S. Ct. 2015 (2018), he argued that because the NTA served on him did not include the date and time of the proceedings, the immigration court never had jurisdiction.  Rivas Palencia also argued that the immigration judge erred in denying his applications for asylum and withholding of removal and finding that he was not entitled to protection under the CAT.

After review, the BIA dismissed the appeal, rejecting each of Rivas Palencia's arguments.  The BIA began by addressing the jurisdictional argument.

6

Even though the NTA failed to include the time and date of his initial hearing, the BIA found that it was sufficient to vest the immigration court with jurisdiction over his removal proceedings. The BIA thus determined that it was not required to terminate the removal proceedings against Rivas Palencia.

Next, the BIA considered whether Rivas Palencia was eligible for asylum. The BIA determined that the immigration judge had not clearly erred in finding that Rivas Palencia failed to establish a well-founded fear of persecution. The BIA assumed that Gonzalez's cousins had threated Rivas Palencia's life. But the BIA determined these threats did not establish that Rivas Palencia had a well-founded fear of persecution in Honduras. The BIA explained that Rivas Palencia had been able to continue to live in his family's home "for approximately a year after the killing of the uncle of his sisters' killers, which was a year after his sisters were murdered, and he did not experience harm during that period." AR 4. In addition, Rivas Palencia's mother had been able to safely live in Honduras, which suggested that the family had not been targeted for harm.

The BIA further concluded that Rivas Palencia failed to establish that "he would be unable to safely relocate within Honduras." *Id.* When Rivas Palencia was asked why he had not relocated within Honduras, the BIA explained, he answered that he had not wanted to leave his mother and that there were high levels of crime throughout Honduras. Although crime was rampant in Honduras,

7

the BIA explained that "an alien's fear of criminality is not a basis for asylum." *Id.* Because Rivas Palencia failed to establish a well-founded fear of persecution in Honduras and that he would be unable to relocate within Honduras, the BIA concluded that he was not entitled to asylum. The BIA then used the same reasoning to determine that Rivas Palencia was ineligible for withholding of removal or protection under the CAT. Rivas Palencia filed a petition for review in our Court.

## II.    ANALYSIS

### A.    Despite the Omissions in the Notice to Appear, the Immigration Court Had Jurisdiction over Rivas Palencia's Removal Proceedings.

We begin with Rivas Palencia's argument that the immigration court lacked jurisdiction over his removal proceedings because the NTA did not indicate the time and place of the removal hearing. We review *de novo* issues of subject matter jurisdiction. *Martinez v. U.S. Att'y Gen.*, 446 F.3d 1219, 1221 (11th Cir. 2006). We agree with the BIA that the immigration court was vested with jurisdiction over the removal proceedings.

The INA provides that an immigration judge shall conduct proceedings to determine whether a noncitizen is removable from the United States. 8 U.S.C. § 1229a(a)(1). At the initiation of removal proceedings, the noncitizen must be served with an NTA specifying, among other things, the nature of the proceedings, the charges against the noncitizen, the requirement that the noncitizen provide

8

address and telephone contact information, the consequences of failing to appear at a removal hearing, and "[t]he time and place at which the proceedings will be held." *Id.* § 1229(a)(1). The INA does not expressly provide the conditions upon which jurisdiction vests with the immigration judge, but regulations state that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court." 8 C.F.R. § 1003.14(a).

In *Pereira*, the Supreme Court recently considered a question "at the intersection of" § 1229(a), which sets forth the contents of an NTA, and the "stop-time" rule for cancellation of removal in 8 U.S.C. § 1229b(d)(1). 138 S. Ct. at 2109-10. To be eligible for cancellation of removal, a noncitizen must be continuously physically present in the United States for a certain length of time, and the stop-time rule states that the period of continuous physical presence stops, in certain circumstances, "when the alien is served a notice to appear under section 1229(a)." 8 U.S.C. § 1229b(d)(1). In *Pereira*, the Supreme Court held that a putative NTA that failed to specify either the time or place of the removal proceedings did not trigger the stop-time rule and thus did not end the noncitizen's continuous physical presence in the United States for purposes of cancellation of removal eligibility. 138 S. Ct. at 2110. The Supreme Court reasoned that a "putative notice to appear that fails to designate the specific time or place of the

9

noncitizen's removal proceedings is not a 'notice to appear under section 1229(a),' and so does not trigger the stop-time rule." *Id.* at 2113-14 (quoting 8 U.S.C. § 1229b(d)(1)).

In *Perez-Sanchez v. United States Attorney General*, we considered a petitioner's claim that the agency "never had jurisdiction over his removal case" when his initial NTA failed to include the time or date of his removal hearing. 935 F.3d 1148, 1150 (11th Cir. 2019). Although the NTA was "unquestionably deficient" under § 1229(a) because it did not specify the time or date of the removal hearing, we held that the defect did not deprive the agency of jurisdiction over the removal proceedings because the statutory "time-and-place requirement" did not "create a jurisdictional rule," but was instead a "claim-processing rule." *Id.* at 1153-55. Having determined that the agency properly exercised jurisdiction over the petitioner's removal proceedings, we denied the portion of his petition raising this jurisdictional issue. *Id.* at 1157.

Our decision in *Perez-Sanchez* forecloses Rivas Palencia's jurisdictional challenge. Even though Rivas Palencia's NTA failed to specify the time and date of his removal hearing, *Perez-Sanchez* establishes that the agency had jurisdiction over his immigration proceedings.[2]

---

[2] Rivas Palencia could have raised a non-jurisdictional argument that the agency failed to follow its claims-processing rules governing the procedural steps it was required to take in order to docket a case before an immigration judge. *See Perez-Sanchez*, 935 F.3d at 1157. But he

10

**B.    Substantial Evidence Supports the BIA's Denial of Rivas Palencia's Asylum Application.**

We now turn to Rivas Palencia's argument that the BIA erred in concluding

that he was ineligible for asylum.  Because the BIA issued its own decision, we

review only that decision, except to the extent that the BIA expressly adopted or

explicitly agreed with the immigration judge's opinion.  *Tang v. U.S. Att'y Gen.*,

578 F.3d 1270, 1275 (11th Cir. 2009).[3]  "We review the BIA's legal conclusions

*de novo* and its factual determinations under the substantial evidence test."  *Lopez*

*v. U.S. Att'y Gen.*, 914 F.3d 1292, 1297 (11th Cir. 2019).  Under the substantial

evidence test, we will affirm the BIA's factual findings as long as they are

"supported by reasonable, substantial, and probative evidence on the record

considered as a whole."  *Id.* (internal quotation marks omitted).  "We will reverse

the BIA's factual findings only if the record compels reversal, and the mere fact

forfeited this argument by failing to challenge the validity of the NTA before the immigration judge.  *See Pierre-Paul v. Barr*, 930 F.3d 684, 692 (5th Cir. 2019), *petition for cert. filed*. No. 19-779 (U.S. Dec. 16, 2019).

[3] Under this standard, Rivas Palencia argues that we should review the immigration judge's decision regarding his credibility and membership in a particular social group because the BIA "simply adopted the [immigration judge's] flawed reasoning, factual determinations, and non-existent credibility determination."  Petitioner's Br. at 17.  We disagree with his characterization of the BIA's decision.  The BIA did not expressly adopt or agree with any reasoning from the immigration judge about Rivas Palencia's credibility or his membership in a particular social group.  In its decision, the BIA instead focused on different elements of the asylum claim, explaining that Rivas Palencia failed to establish he had an objectively reasonable fear of persecution in Honduras and would be unable to safely relocate within Honduras.  We thus do not review the immigration judge's decision regarding Rivas Palencia's credibility or membership in a particular social group because the BIA did not expressly adopt or agree with these portions of the immigration judge's decision.

11

that the record may support a contrary conclusion is insufficient to justify reversal of the BIA's findings." *Id.*

An undocumented immigrant who is present in the United States may apply for asylum. 8 U.S.C. § 1158(a)(1). The government has discretion to grant asylum if the applicant establishes that he is a "refugee." *Id.* § 1158(b)(1)(A). A refugee is a person "who is unable or unwilling to return to, and is unable or unwilling to avail himself . . . of the protection of, [his . . . country of nationality] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A).

To establish asylum eligibility, the applicant must, with specific and credible evidence, show "(1) past persecution on account of a statutorily listed factor," or (2) "a well-founded fear that the statutorily listed factor will cause . . . future persecution." *Id.* (internal quotation marks omitted). Under the law, persecution is an "extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation" and "mere harassment does not amount to persecution." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (alteration adopted) (internal quotation marks omitted).

Here, Rivas Palencia has not argued that he is entitled to asylum based on past persecution, so we focus our analysis on whether substantial evidence

12

supports the BIA's determination that he failed to meet his burden of proving a well-founded fear of future persecution. In order to establish a well-founded fear of future persecution, an applicant must show the following: "(1) he fears persecution based on his membership in a particular social group, political opinion, or other statutorily listed factor; (2) there is a reasonable possibility that he will suffer persecution if removed to his native country; and (3) he is unable or unwilling to return to his native country because he fears persecution." *Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1291 (11th Cir. 2006).[4] The applicant's fear must be "both subjectively genuine and objectively reasonable." *Id.* An applicant's credible testimony that he genuinely fears persecution may satisfy the subjective component. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006). And evidence of past persecution or a valid reason to fear future persecution may fulfill the objective component. *Id.* We have cautioned that "[o]nly in a rare case does the record compel the conclusion that an applicant for asylum . . . has a well-founded fear of future persecution." *Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1332 (11th Cir. 2010) (alteration adopted) (internal quotation marks omitted).

---

[4] An applicant need not establish a reasonable possibility of persecution if he instead proves "that he is a member of, or is identified with, a group that is subjected to a 'pattern or practice' of persecution in his country of nationality." *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1352 (11th Cir. 2009) (quoting 8 C.F.R. § 208.13(b)(2)(iii)). Rivas Palencia does not contend that he is a member of such a group.

Even if an applicant satisfies these requirements, he does not have a well-founded fear of future persecution if he could avoid persecution by safely relocating within his country of nationality.  *See* 8 C.F.R. § 208.13(b)(2)(iii).  When the alleged persecutor is a private individual, the applicant bears the burden of demonstrating that he cannot safely relocate within his country of nationality.  *Id.* § 208.13(b)(3)(i).

Here, the BIA determined that Rivas Palencia failed to demonstrate a reasonable possibility that he would be subject to persecution if he returned to Honduras.  Record evidence supports this conclusion.  Although Rivas Palencia was threatened by Gonzalez's family after their uncle's murder, the record evidence shows that for a year after Gonzalez's uncle was murdered, Rivas Palencia remained in his hometown without being physically harmed.  The fact that Rivas Palencia successfully avoided harm for this extended period of time is evidence that there is not a reasonable possibility that he would suffer future prosecution if he returned to Honduras.  *See Zheng*, 451 F.3d at 1292 n.3.

Rivas Palencia argues that he reasonably fears returning to Honduras due to the risk that Gonzalez's family will kill him in retribution for their uncle's murder.  Certainly, Rivas Palencia testified that he had this fear.  But, under the substantial evidence standard, we are not asking whether there is *any* evidence that supports Rivas Palencia's position because the mere fact that the record may support the

14

contrary conclusion is insufficient to justify a reversal.  *See Lopez*, 914 F.3d at 1297.  On this record, we conclude that substantial evidence supports the BIA's conclusion that Rivas Palencia failed to carry his burden to show a reasonable possibility of future persecution upon his return to Honduras.[5]

Rivas Palencia nonetheless urges us to reverse the BIA's decision because, he argues, the BIA failed to give reasoned consideration to his argument that he had a well-founded fear of future persecution.  He contends that the substance of the BIA's reasoning shows that it "has merely reacted [to] and has not really heard or thought through [his] claim or arguments."  Petitioner's Br. at 26.

We acknowledge that "when a decision of an immigration judge or the BIA is so lacking in reasoned consideration and explanation that meaningful review is impossible," it is appropriate to grant a petition for review, vacate the agency's decision, and remand for further proceedings.  *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 803 (11th Cir. 2016).  In examining whether there was reasoned consideration, we look "to see whether the agency has considered the issues raised

---

[5] We note that the BIA also provided a second reason for denying Rivas Palencia's application:  he failed to carry his burden of proving that he could not safely relocate within Honduras.  The BIA explained that Rivas Palencia failed to establish that his fear of persecution exists nationwide.  Because Rivas Palencia's asylum claim is based on threats from Gonzalez's family and he failed to show that he would remain at risk if he relocated within Honduras, we conclude that the record also supports the BIA's alternative reason for denying asylum.  *See Mazariegos v. Office of U.S. Att'y Gen.*, 241 F.3d 1320, 1327-28 (11th Cir. 2001) (concluding that substantial evidence existed to support a finding that the petitioner could safely relocate within his home country when he failed to show that his alleged persecutors operated throughout the entire country).

and announced its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Id.* (alterations adopted) (internal quotation marks omitted). An agency fails to give reasoned consideration to a claim "when it misstates the contents of the record, fails to adequately explain its rejection of logical conclusions, or provides justifications for its decision which are unreasonable and which do not respond to any arguments in the record." *Id.*

The BIA's decision shows that it gave reasoned consideration to whether Rivas Palencia had a well-founded fear of future persecution. There is no indication that the BIA misstated the contents of the record, failed to adequately explain its rejection of a logical conclusion, or provided an unreasonable justification for a decision that did not respond to an argument in the record. Rivas Palencia's argument that the BIA failed to give reasoned consideration boils down to an assertion that the record evidence was "clear" and compelled a finding that he "reasonably fears harm" if he were to return to Honduras. Petitioner's Br. at 26. But as we explained above, we cannot say that the record compels this conclusion given the evidence showing that Rivas Palencia continued to live in Honduras for over a year after Gonzalez's uncle was murdered. We thus conclude that the BIA

16

did not err in finding that Rivas Palencia failed to demonstrate that he had an objectively reasonable fear of persecution.[6]

Because substantial evidence supports the BIA's determination that Rivas Palencia failed to satisfy the standard for asylum eligibility, we also conclude that substantial evidence supports the BIA's conclusion that he failed to satisfy the higher standards for withholding of removal or CAT relief.  *See Zheng*, 451 F.3d at 1292 (recognizing that when a petitioner fails to establish a claim of asylum on the merits, he also fails to establish eligibility for withholding of removal or protection under the CAT).

## III.    CONCLUSION

For the foregoing reasons, Rivas Palencia's petition is denied.

**PETITION DENIED.**

---

[6] Rivas Palencia also argues that the BIA failed to give reasoned consideration to his claim by failing to address whether he was a member of a particular social group.  Because the BIA affirmed the denial of Rivas Palencia's asylum claim on the ground that he failed to establish a well-founded fear of persecution, it was not required to address the other elements of his claim, including whether he was a member of a particular social group.  *See Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1302 (11th Cir. 2015).

17