In the

# United States Court of Appeals
## For the Seventh Circuit

───────────────

No. 21-1179

JESUS MIGUEL ARREOLA-OCHOA,

*Petitioner*,

*v.*

MERRICK B. GARLAND, Attorney General
of the United States,

*Respondent*.

───────────────

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A206-305-102.

───────────────

ARGUED JANUARY 19, 2022 — DECIDED MAY 17, 2022

───────────────

Before WOOD, HAMILTON, and JACKSON-AKIWUMI, *Circuit Judges*.

WOOD, *Circuit Judge*. Jesus Arreola-Ochoa is seeking cancellation of his removal from the United States. He asserts that he is entitled to this relief based on the hardship that would result to his family should he be forced to return to Mexico. First an immigration judge and then the Board of Immigration Appeals denied his petition, and so he has brought his case to

this court. Finding nothing in the Board's action that would warrant the relief he seeks, we deny the petition for review.

**I**

A

Arreola has been living in the United States without authorization to do so for more than 25 years. He illegally entered the country in March 1996, and he has been here ever since. He and his partner Maria have two children, Elizabeth and Allison. Both Elizabeth and Allison are U.S. citizens by birth, and they live with their parents. In addition, Maria has two daughters from a prior relationship, Areli and Saira, both of whom also live with her and Arreola. Finally, the household includes Saira's two children and Elizabeth's one child.

By all accounts, this is a close-knit family. Arreola, who works in the construction industry, is the primary breadwinner. Testimony in the record from Elizabeth described the heartbreak that Arreola's removal would cause. More concretely, Arreola would lose the ability to care for his family in critical ways. Health care is one: Maria suffers from severe migraines and some hearing problems, and Elizabeth stated that she has a recurring lung infection. Housing is another: Arreola has been in a rent-to-buy program for the family home, but his removal would as a practical matter result in their eviction. And nothing but danger awaits him in Mexico. After a quarter century, he no longer has ties in the country of his birth. He lacks a home there, and he fears being kidnapped based on the false perception that all people coming from the United States have money.

B

The Department of Homeland Security's Immigration and Customs Enforcement branch learned about Arreola after he was convicted for driving while intoxicated on July 29, 2015. His initial Notice to Appear was dated August 3, 2015, and was filed with the immigration court on August 14, 2015. It charged that Arreola was inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), which applies to "[a]n alien present in the United States without being admitted or paroled." Like many notices issued during that era, it provided a physical location but said only that the date and time of the removal proceedings were "[t]o be set." Also on August 14, the Immigration Judge (IJ) issued a notice of hearing to Arreola; that notice set an initial hearing for August 24, 2015, and specified where it was to occur. Arreola was released on bond on August 17, 2015.

Between 2015 and 2017, DHS notified Arreola several times of the date for his master hearing of several changes in that date. For instance, on August 25, 2015, he received a notice setting the hearing for April 26, 2016. That date seems to have slipped, because on June 5, 2017, he received a notice saying that the hearing would take place on August 2, 2017. The latter proved to be a firm date. That was his first appearance before an IJ. At that time, he admitted the key factual allegations in his Notice and conceded removability. He designated Mexico as the proper destination, should removal be necessary. Finally, he filed an application for cancellation of removal. He said nothing about the omission of the date and time from his initial Notice.

The hearing on the merits of the cancellation application was scheduled for July 23, 2018. On July 20, just three days

before the hearing, Arreola filed a motion to terminate the removal proceedings on the ground that his initial Notice to Appear did not provide a date and time for his appearance. His motion was prompted by the fact that about a month earlier, the Supreme Court had handed down its decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), which held that a Notice to Appear that lacks time or place information does not suffice to trigger the statutory stop-time rule, under which a noncitizen's continuous presence in the United States is measured for purposes of cancellation of removal. See 8 U.S.C. § 1229b(d)(1). The IJ gave DHS an opportunity to respond to the motion to terminate at the merits hearing. DHS filed a written response shortly thereafter; it argued that *Pereira* did not apply to issues other than the stop-time rule and that the later document providing the time and place of the hearing cured any shortcomings in the original Notice.

The IJ held the July 23 hearing as scheduled. The judge then closed the record and set October 1, 2018, as the date for a hearing at which it would rule on Arreola's two pending motions: the one to terminate and the one for cancellation of removal. At the October 1 hearing, the IJ denied both motions. With respect to the *Pereira* issue, the judge followed the Board's decision in *Matter of Bermudez-Cota*, 27 I&N Dec. 441 (BIA 2018), which held that the agency's later provision of the missing information cured the violation of section 1229(a). Under *Bermudez-Cota*, Arreola's motion had to be denied. With respect to cancellation, the IJ held that Arreola had established the requisite period of physical presence and good moral character for eligibility, but that he had failed to show that his removal "would result in exceptional and extremely unusual hardship to [his] … child, who is a citizen of the United States … ." The IJ explained this conclusion as follows:

Here, the record indicates that both of the respondent's daughters are in good health. Although he has submitted evidence indicating that their mother suffers from hearing loss and that her (Maria's) daughter has been treated for migraines, neither of them are within the protected class for hardship purposes. Neither daughter appears to have any special educational needs and there is also no evidence of record reflecting the emotional or psychological impact of the respondent's departure upon them.

Arreola appealed this decision to the Board. By the time the Board resolved the appeal, Elizabeth was too old to serve as a qualifying relative, because she had reached the age of 21. See 8 U.S.C. § 1101(b)(1). Allison still met the statutory definition, but the Board stated that it was satisfied with the IJ's finding that Allison "is in good health, and has no special educational needs." The Board acknowledged that "[Arreola's] removal will likely result in educational, emotional, and financial hardship to his qualifying relative." But, it added, "[t]he evidence … does not establish that the child would suffer hardship that is beyond that which ordinarily would be expected as a result of a relative's removal." It therefore affirmed the IJ's order of removal. Arreola then filed this timely petition for review.

## II

### A

Arreola begins by urging us to revisit our holding in *Ortiz-Santiago v. Barr*, 924 F.3d 956 (7th Cir. 2019), in which we held that "[t]he requirement that a Notice [to Appear] include, within its four corners, the time, date, and place of the

removal proceeding is not 'jurisdictional' in nature. It is instead the agency's version of a claim-processing rule, violations of which can be forfeited if an objection is not raised in a timely manner." *Id.* at 958. In so holding, we took note of the fact that 8 U.S.C. § 1229(a)(1)(G)(i), which establishes the time and place requirements for Notices to Appear, does not use jurisdictional terminology. As a practical matter, it disposes of most of his jurisdictional argument.

Arreola is far from the first person to ask us to revisit this holding. See, *e.g.*, *De La Rosa v. Garland*, 2 F.4th 685, 687 (7th Cir. 2021); *Mejia-Padilla v. Garland*, 2 F.4th 1026, 1032–33 (7th Cir. 2021). Moreover, he has not offered a compelling reason for us to do so. Nothing the Supreme Court said in *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021), undermines our position. That case concerned the distinct question whether a flawed Notice to Appear could be saved by a later document that fills in the time-and-place blanks; the Supreme Court said no. The Court had no occasion to address the question whether a Notice that omits time and place is insufficient to vest the immigration court with authority over the case, or if those omissions have a lesser consequence.

Our sister circuits agree with us that the time-and-place rules are not jurisdictional. As our colleagues in the Fifth Circuit said in *Pierre-Paul v. Barr*, 930 F.3d 684 (5th Cir. 2019), there has been an "overwhelming chorus" from the circuits rejecting (on varying rationales) the proposition that *Pereira* requires the dismissal of any case that was initiated with a Notice to Appear that lacked time-and-place information. *Id.* at 689 (citing cases). *Pierre-Paul* expressly agreed with our characterization of the governing regulation, 8 C.F.R. § 1003.14, as a claim-processing rule. *Id.* at 691–93.

Attempting to avoid this wall of adverse authority, Arreola argues that even if section 1229(a)(1)(G)(i) is not jurisdictional, his case nevertheless must be dismissed because 8 U.S.C. § 1229a(a) *is* jurisdictional, and that is the statute that provides for removal proceedings. Section 1229a(a)(3) states that "a proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be admitted … or, if the alien has been so admitted, removed." *Id.* Arreola reasons that a noncitizen cannot be in removal proceedings unless the person has received a valid Notice to Appear. But this is essentially the same argument we rejected in *Ortiz-Santiago*. Everyone agrees that a Notice to Appear is the initiating document for removal proceedings. The only question is whether a particular flaw in that document can be addressed only by dismissing the proceeding altogether, no matter when the noncitizen raises the point, and no matter how prejudicial (or harmless) it is, or if timeliness and prejudice matter. *Ortiz-Santiago* says that timeliness and prejudice are central to the time-and-place rule.

The proper inquiry in an immigration case does not turn on the mere discovery of an omission of information that the statute says must be included in a Notice to Appear. See 8 U.S.C. § 1229(a)(1). Instead, the noncitizen must still satisfy the requirements of either of two paths to relief. Under the first path, we ask whether the noncitizen raised a timely objection to the Notice. If so, then the proceeding must be dismissed for failure to comply with a mandatory claims-processing rule. The second path, which comes into play if the objection was untimely, is a bit more complex. The noncitizen must provide an excuse for the delay as well as show prejudice from the lack of prompt information about time, place, or both. See *Ortiz-Santiago*, 924 F.3d at 965; *De La Rosa*,

2 F.4th at 688. If the noncitizen can meet that burden, then again the proceeding must be dismissed. After either type of dismissal, DHS remains free to issue a proper Notice and begin a new proceeding. Given the holding in *Pereira*, that may make a difference for some noncitizens, because the period for continuous residence will have continued to accrue.

B

Anticipating that we were likely to adhere to *Ortiz-Santiago*, Arreola takes the back-up position that he objected to the omission of the time-related information in a timely fashion and is therefore entitled to relief. This presents us with a difficult question of line-drawing. No one would doubt that an objection made within a week of receiving the defective Notice to Appear is made in a timely way, just as no one would doubt that an objection that showed up for the first time in the court of appeals is too late. The outer limits, we think, must fall between the earliest day possible after receipt of the Notice, on the one end, and the conclusion of proceedings before the immigration court, on the other. Our prior cases confirm that objections raised after the termination of immigration-court proceedings are too late, see, *e.g.*, *Meraz-Saucedo v. Rosen*, 986 F.3d 676, 683 (7th Cir. 2021), though we have not defined a bright-line moment during proceedings at which a claim moves from timely to untimely.

The immigration laws provide little guidance that would help us to choose such a fixed point. Classically, in that situation courts say that the act at issue (here, filing an objection to a defective Notice) must be done within a *reasonable* time. See, *e.g.*, *Nunez v. Dautel*, 86 U.S. 560, 562 (1873) (deciding what would be a reasonable time for making a payment after a

promise to pay); *Louisville Mfg. Co. v. Welch*, 51 U.S. 461, 474 (1850) (notice given under a letter of credit regarding the amount a guarantor must cover should be communicated within a reasonable time, and "[w]hat is a reasonable time must depend upon the circumstances of each particular case"); see also *United States v. Irvine*, 511 U.S. 224, 234 (1994) (tax-free disclaimer must be made within a reasonable time of knowledge of a transfer, bearing in mind that the gift tax was intended "to curb avoidance of the estate tax"). That is essentially a factual question, though as *Irvine* noted, one that is informed by the laws and interests at issue in the case.

Like these earlier examples, the statute now before us calls for a holistic and circumstance-specific analysis of timeliness. It is true that the Supreme Court sometimes creates presumptive time deadlines. See, *e.g., County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991) (finding that a judicial determination of probable cause that occurs within 48 hours of arrest is speedy enough). But that strikes us as inappropriate for a lower court to do in the present setting. We can find nothing in the statute inviting us to announce that an objection is timely if it is made within but no later than a randomly chosen number of days (say, 90). The best we can do is to suggest, by way of example only, the types of considerations that often help in the determination of timeliness. These are not mandatory "factors" that must doggedly be followed, or even a checklist; they reflect only facts that have been useful in assessing the timeliness of claims in similar settings:

- how much time passed, in absolute terms, between the receipt of the Notice and the raising of the objection;

- did the immigration court set a schedule for fil-
  ing objections, and did the objection comply
  with that schedule;

- how much of the merits had been discussed or
  determined prior to the objection?

Some of these considerations are also useful in judging
whether the untimeliness of an objection should be excused,
if the noncitizen were to pursue this path to relief. Factors rel-
evant to excuse and prejudice might include the following:

- if the recipient does not speak English, did she
  object promptly after receiving adequate trans-
  lation services and notice;

- did the person have legal counsel at the outset,
  and if she obtained counsel only later, did coun-
  sel object promptly after entering the case;

- did the noncitizen file any prior objections but
  omit this objection?

We stress again that these are not an exhaustive list of consid-
erations bearing on the question of timeliness, excuse, and
prejudice. Other considerations may carry weight in future
cases.

A number of these points are adverse to Arreola. For ex-
ample, he did not respond promptly to his Notice to Appear.
By August 14, 2015, the Notice had been filed with the immi-
gration court; he had his master hearing on August 2, 2017;
and he raised this objection only on July 20, 2018, almost three
years after the proceedings were initiated and just three days
before his merits hearing was scheduled to start. That is a long
time by anyone's measure. Even so, it might be justifiable if

the objection were made at or reasonably soon after the master hearing, especially if the master hearing occurred shortly after the original Notice. That was not the case here, however; Arreola's master hearing took place a full year before he raised this objection. This consideration weighs in favor of finding his objection untimely.

On the other hand, some points favor him. Arreola did not disregard any filing schedule. So too, the IJ had not yet discussed—much less decided—the merits as of the time of his objection. But Arreola's objection came very close to the last minute—he raised it on the Friday before the Monday merits hearing. This undercuts what would otherwise be a strong reason to find in his favor. Given the last-minute nature of his objection, along with the facts that it took him three years to raise the claim and that he had access to counsel and translation services, we conclude that he did not make a timely objection.

That puts him on the second path we identified earlier, under which he can prevail only if his lateness is excusable and he can show prejudice flowing from the omission of the time and place information in his Notice. We conclude that he has not met that burden. Arreola argues that he did not realize that the flawed-notice argument was available until *Pereira* was decided. But we previously have explained why *Pereira* was not so unexpected and unpredictable that its emergence alone excuses a late objection. See *Vyloha v. Barr*, 929 F.3d 812, 817 (7th Cir. 2019) ("Vyloha could have argued that his notice was statutorily deficient well before the *Pereira* decision."); *Ortiz-Santiago*, 924 F.3d at 964 (noting that courts had been questioning the Board's casual treatment of the time-and-place rules before *Pereira*). Not having access to counsel or

translation services, or being restricted in some other way, could excuse a late objection, but Arreola makes no such argument; in addition, the record indicates that Arreola was represented by counsel and had access to translation services at the master hearing. The only consideration counseling in favor of excusing Arreola's late objection is the fact that he previously had not filed other objections. But this fact alone is not enough to outweigh the other considerations.

Furthermore, even if Arreola's untimeliness were excused, one cannot find on this record—indeed, Arreola does not even allege—prejudice stemming from the defective Notice. He was aware of both the times and places of his hearings and actively participated in them. There is no evidence that he went to the wrong place, had the wrong time, missed any hearings, had difficulty presenting witnesses or some other evidence, or encountered any other problem that the omission of this information in the Notice might have caused. Prejudice in this situation does not have to be much (*i.e.*, a petitioner need not go so far as to show that the IJ's ultimate decision would have been different absent the defect), but it must be something. We therefore find that the error in the Notice does not justify setting aside these proceedings and requiring DHS to start over (should it choose to do so).

### III

On the merits, Arreola contends only that the Board erred in its determination that his removal would not result in "exceptional and extremely unusual hardship" to his minor U.S.-citizen daughter Allison. See 8 U.S.C. § 1229b(b)(1). It was his burden to show some kind of hardship that is "substantially different from, or beyond, that which would be normally expected from the deportation of an alien with close family

members in the United States." *Martinez-Baez v. Wilkinson*, 986 F.3d 966, 975 (7th Cir. 2021). We have jurisdiction to consider legal issues in connection with this determination. See 8 U.S.C. § 1252(a)(2)(D). In addition, the Supreme Court has held that it "can reasonably interpret the statutory term 'questions of law' to encompass the application of law to undisputed facts." *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1070 (2020). Here, the facts that Arreola has presented to show the hardship that Allison will suffer are not disputed. The only question is whether the Board's decision that those facts did not amount to "hardship" under the statute was a reasonable application of the hardship standard.

We must defer to the Board's handling of this type of mixed question of law and fact. We readily accept that Arreola and his family will be devastated if he is removed—and that is true whether Arreola must go back to Mexico by himself or whether he takes his family with him. But that consequence is regrettably common in these cases. The Board was entitled to find, as it did, that there is nothing "exceptional" and "extreme" about the impact his removal will have on Allison, the qualifying U.S.-citizen family member. Arreola pleads that his family is especially close, but he does not point to anything more concrete as a hardship. It would require a change in the immigration laws—one that lies outside our competence—to find that the kind of personal hardship on which Arreola is relying could serve to support cancellation of removal.

*        *        *

We DENY the petition for review.