In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 21‐1642
FRANCISCO CRUZ‐VELASCO,
 Petitioner,
 v.

MERRICK B. GARLAND, Attorney General
of the United States,
 Respondent.
 ____________________

 Petition for Review of an Order of
 the Board of Immigration Appeals.
 No. A205‐154‐344.
 ____________________

 ARGUED SEPTEMBER 8, 2022 — DECIDED JANUARY 24, 2023
 ____________________

 Before WOOD, ST. EVE, and JACKSON‐AKIWUMI, Circuit
Judges.
 WOOD, Circuit Judge. Francisco Cruz‐Velasco, a native and
citizen of Mexico, is seeking cancellation of removal under
8 U.S.C. § 1229b(b). To succeed, he must prove that he has
been a person of good moral character during the ten years
preceding the date of his application. But after two convic‐
tions for driving while intoxicated, Cruz‐Velasco faces an
2 No. 21‐1642

uphill battle. An immigration judge held that his criminal con‐
victions demonstrated a lack of good moral character and or‐
dered his removal; the Board of Immigration Appeals af‐
firmed. Cruz‐Velasco filed a motion to reopen his application,
but the Board denied his request. He now challenges the
Board’s denial of his motion to reopen. Finding no reversible
error, we deny his petition for review.
 I
 A
 Cruz‐Velasco first entered the United States without in‐
spection in 1999. He has remained continuously present in the
country ever since, raising his two American‐born sons as a
single father after the premature death of his partner. (Alt‐
hough he made two brief trips to Mexico, they did not cause
a break in his continuous physical presence.)
 In 2013, Cruz‐Velasco was charged with reckless driving,
endangering safety, and operating a vehicle while intoxi‐
cated. The charges related to his unfortunate decision to have
alcoholic drinks (quantity unknown) at a birthday party and
then to drive home with his nine‐ and eleven‐year‐old sons in
the car. He was convicted of these oﬀenses in 2014 and sen‐
tenced to serve ten days in jail. But that was the least of his
problems. In the wake of his arrest, immigration oﬃcers
sought his removal on the ground that he was unlawfully pre‐
sent in the United States without admission or parole. Cruz‐
Velasco conceded his removability but applied for cancella‐
tion of removal under 8 U.S.C. § 1229b(b). In 2016, while in
removal proceedings, Cruz‐Velasco was charged again with
operating a vehicle while intoxicated. He was convicted in
2018 and sentenced to serve another ten days in jail.
No. 21‐1642 3

 B
 Cruz‐Velasco appeared at his removal hearing in July
2018. To establish eligibility for cancellation of removal, he
had to prove (among other things) that (a) he had been phys‐
ically present in the United States for at least ten consecutive
years immediately preceding the date of his application, (b)
he had been a person of “good moral character” during that
period, and (c) his removal would cause “exceptional and ex‐
tremely unusual hardship” to his U.S.‐citizen sons. 8 U.S.C.
§ 1229b(b). At the hearing, Cruz‐Velasco established that he
had been present in the United States since 2008; addressed
the hardship his sons would suﬀer if he were removed; ex‐
plained the circumstances surrounding each of his criminal
oﬀenses; and testified that he had entirely stopped drinking
after his 2016 arrest and had completed the court‐ordered
substance abuse program.
 The immigration judge (IJ) found these arguments want‐
ing, held that he was statutorily ineligible for cancellation of
removal, and ordered his removal. First, the IJ concluded that
Cruz‐Velasco had failed to establish that his sons would suﬀer
hardship beyond what is predictable as a result of a parent’s
removal. Next, the judge held that his two criminal convic‐
tions for operating while intoxicated demonstrated a lack of
good moral character. Noting the seriousness of his first of‐
fense, the IJ stressed Cruz‐Velasco’s failure to learn from his
mistake, as shown by his arrest for operating while intoxi‐
cated only three years later. In the judge’s view, Cruz‐Ve‐
lasco’s rehabilitation was insuﬃcient to outweigh the eﬀect of
these two convictions.
 Cruz‐Velasco appealed to the Board of Immigration Ap‐
peals. While the appeal was pending, the Attorney General
4 No. 21‐1642

ruled that two or more convictions for driving under the in‐
fluence in the relevant period raise a presumption that a
noncitizen lacks good moral character. Matter of Castillo‐Perez,
27 I.&N. Dec. 664, 669–71, 673 (A.G. 2019). Moreover, the rul‐
ing stated, that presumption cannot be overcome solely by ev‐
idence showing rehabilitation. Id. at 671. Relying on Matter of
Castillo‐Perez, the Board aﬃrmed the IJ’s decision and held
that Cruz‐Velasco’s rehabilitation eﬀorts were not enough to
overcome his presumed lack of good moral character.
 Amid the 2020 COVID‐19 pandemic, Cruz‐Velasco filed a
motion to reopen his cancellation‐of‐removal application. He
submitted new evidence showing that he had been diagnosed
with diabetes and that this condition increased his risk of dy‐
ing from COVID‐19 in Mexico. He also reiterated that he had
the requisite moral character because he had abstained from
drinking alcohol since his 2016 arrest.
 The Board denied Cruz‐Velasco’s motion, finding that the
COVID‐19 pandemic did not meaningfully distinguish his sit‐
uation from that of other noncitizens seeking cancellation of
removal. It also confirmed that his evidence of rehabilitation
did not overcome his presumed lack of good moral character
resulting from his criminal convictions. Finally, the Board
specifically noted that it was not willing to invoke its sua
sponte reopening authority to grant relief. Notably, however,
the Board failed to address Cruz‐Velasco’s argument concern‐
ing his higher‐than‐normal risk of dying as a result of his di‐
abetes.
 Cruz‐Velasco timely filed the present petition for review,
arguing that the Board erred in denying his motion to reopen.
The government concedes that the Board failed to address
Cruz‐Velasco’s diabetes claim. Even so, the government
No. 21‐1642 5

argues that this omission is immaterial because Cruz‐Ve‐
lasco’s lack of good moral character constitutes an adequate
and independent basis for denying reopening. We agree with
the latter proposition and thus address only Cruz‐Velasco’s
contentions that the Board erred in determining that he failed
to establish good moral character and in refusing to exercise
its sua sponte authority to reopen.
 II
 A
 Before delving into the merits of Cruz‐Velasco’s moral
character, we must add a word about our jurisdiction.
Whether we have authority to review the Board’s denial of a
motion to reopen depends on our authority to review the
Board’s underlying decision ordering Cruz‐Velasco’s re‐
moval. See Sanchez v. Sessions, 894 F.3d 858, 862 (7th Cir. 2018)
(citing Cruz‐Mayaho v. Holder, 698 F.3d 574, 576 (7th Cir. 2012)
(“[W]here we lack the power to review the Board’s underly‐
ing order … we ordinarily lack the authority to review the de‐
nial of a request to reconsider or reopen that order.”)).
 We lack jurisdiction to review “any judgment regarding
the granting of relief” under the cancellation‐of‐removal pro‐
visions in section 1229b. 8 U.S.C. § 1252(a)(2)(B)(i). But we re‐
tain jurisdiction to review constitutional claims and questions
of law. Id. § 1252(a)(2)(D). Further, we have held that the
Board’s “application of law to undisputed facts” itself raises
a question of law that falls within our jurisdiction. Arreola‐
Ochoa v. Garland, 34 F.4th 603, 610 (7th Cir. 2022) (quoting
Guerrero‐Lasprilla v. Barr, 140 S. Ct. 1062, 1070 (2020)).
 Cruz‐Velasco claims that the Board erred in failing to con‐
sider the fact that he has abstained from drinking alcohol
6 No. 21‐1642

since 2016. Because no one disputes the length of Cruz‐Ve‐
lasco’s sobriety or any other evidence concerning his rehabil‐
itation, we have jurisdiction to decide whether the Board rea‐
sonably applied the good‐moral‐character standard to those
undisputed facts. See id. (asserting jurisdiction to review the
Board’s application of the hardship standard to undisputed
facts). The government challenges that point, however, based
on the Supreme Court’s recent decision in Patel v. Garland, 142
S. Ct. 1614 (2022).
 Patel addressed the question whether section
1252(a)(2)(B)(i) precludes federal courts from reviewing a de‐
termination that a petitioner’s testimony is not credible. 142 S.
Ct. at 1621–22. The Supreme Court held that “[f]ederal courts
lack jurisdiction to review facts found as part of discretionary‐
relief proceedings under § 1255 and the other provisions enu‐
merated in § 1252(a)(2)(B)(i).” Id. at 1627 (emphasis added).
Relying on Patel, the government contends that we cannot ap‐
ply the mixed‐questions framework in the context of section
1252(a)(2)(B)(i). But the government reads Patel too broadly.
 The Patel Court explicitly clarified that it was dealing only
with “judicial review of factfinding,” not the application of a
legal standard to undisputed facts under section 1252(a)(2)(D).
Id. at 1618, 1623. To illustrate this point, let’s assume that the
IJ had deemed Cruz‐Velasco’s testimony not credible and had
ruled that he lacked good moral character because he had not
remained sober. Section 1252(a)(2)(B)(i) would have pre‐
cluded us from reviewing that underlying factual finding. But
here, no one questions the IJ’s findings of fact; the length of
Cruz‐Velasco’s sobriety is undisputed. We are asked only to
decide whether the Board erred in determining that Cruz‐Ve‐
lasco’s rehabilitation failed as a matter of law to satisfy the
No. 21‐1642 7

good‐moral‐character standard. Guerrero‐Lasprilla and Arre‐
ola‐Ochoa hold that this situation is covered by section
1252(a)(2)(D), and nothing in Patel requires a diﬀerent result.
 Because we have jurisdiction over the Board’s underlying
determination of good moral character, we also have jurisdic‐
tion over the Board’s denial of Cruz‐Velasco’s motion to reo‐
pen. On to the merits.
 B
 We review the Board’s denial of a motion to reopen for
abuse of discretion. Victor v. Holder, 616 F.3d 705, 708 (7th Cir.
2010) (citing Kucana v. Holder, 130 S. Ct. 827, 834 (2010)). Relief
is appropriate only if the decision “was made without a ra‐
tional explanation, inexplicably departed from established
policies, or rested on an impermissible basis such as invidious
discrimination against a particular race or group.” Id. (quot‐
ing Achacoso‐Sanchez v. I.N.S., 779 F.2d 1260, 1265 (7th Cir.
1985)).
 Applying this highly deferential standard, we see no rea‐
son for disturbing the Board’s good‐moral‐character determi‐
nation. Cruz‐Velasco drove drunk while his two young sons
were in the car. The Board was entitled to label this as a seri‐
ous oﬀense. Despite its gravity, Cruz‐Velasco was again ar‐
rested for driving while intoxicated only three years later. The
Board’s position that these convictions reflected a lack of good
moral character did not amount to an abuse of discretion.
 Moreover, the Board did not (as Cruz‐Velasco contends)
fail to consider the significance of his long period of sobriety.
To the contrary, the Board specifically recognized that Cruz‐
Velasco “completed each obligation ordered by the criminal
court; stopped drinking; and continued to work, pay taxes,
8 No. 21‐1642

and help support his sons and granddaughter.” At that point,
the Board relied on Matter of Castillo‐Perez to hold that Cruz‐
Velasco’s rehabilitation did not overcome the presumed lack
of good moral character. Its decision to weigh the evidence
consistently with the Attorney General’s opinion lay comfort‐
ably within its discretion.
 Furthermore, even assuming that the Board had ignored
Matter of Castillo‐Perez, it was entitled to assign “substantial
weight to a single incident of drunk driving [had] the facts
persuade[d] it to do so.” See Meza v. Garland, 5 F.4th 732, 736–
37 (7th Cir. 2021). It follows that the Board had some leeway
to hold that Cruz‐Velasco lacks good moral character based
exclusively on his first oﬀense for driving under the influence
with his children in the car. The Board also reasonably could
have thought that Cruz‐Velasco’s second oﬀense bolstered
that conclusion.
 In his reply brief, Cruz‐Velasco claimed that the Board
erred in retroactively applying Matter of Castillo‐Perez to his
criminal convictions. But Cruz‐Velasco waived this claim by
raising it for the first time in his reply brief. See United States
v. Cruse, 805 F.3d 795, 818 n.7 (7th Cir. 2015).
 III
 Finally, we address the Board’s decision not to exercise its
sua sponte authority to reopen Cruz‐Velasco’s case. “The
Board may at any time reopen or reconsider a case in which it
has rendered a decision on its own motion ….” 8 C.F.R.
§ 1003.2(a) (2020). “[T]he merits of the Board’s decision not to
reopen a case sua sponte are unreviewable” unless it was
tainted by a legal error. Fuller v. Whitaker, 914 F.3d 514, 519
(7th Cir. 2019).
No. 21‐1642 9

 Without much explanation, Cruz‐Velasco argues that the
Board erred in relying on Matter of H‐Y‐Z‐, 28 I.&N. Dec. 156
(B.I.A. 2020), when it refused to exercise its sua sponte author‐
ity. The Board cited that case for the following proposition:
new grounds for relief that accrue while the person remains
illegally in the country do not demonstrate the kind of excep‐
tional situation required for sua sponte reopening. That is,
even if Cruz‐Velasco had met the statutory criteria—which he
did not—the Board was still entitled to refuse to exercise its
sua sponte authority. It relied on Matter of H‐Y‐Z‐ only to ex‐
plain the applicable legal framework; the facts were otherwise
beside the point. Given the exceptionally broad discretion
that the Board enjoys with respect to its sua sponte authority,
we see nothing objectionable—and certainly no legal error—
here.
 What Cruz‐Velasco really wants is plenary review of the
merits of the Board’s decision to reopen. We lack the authority
to do so, however, absent extraordinary circumstances.
 * * *
 We DENY the petition for review.